(No. 18794.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MIKE KURANT, Plaintiff in Error.

*Opinion filed October 25, 1928.*

R. Guy Kneedler, and Thomas Williamson, (War-nock, Williamson & Burroughs, of counsel,) for plaintiff in error.

Oscar E. Carlstrom, Attorney General, Alvin C. Bohm, State's Attorney, and Roy D. Johnson, (I. H. Streeper, of counsel,) for the People.

Mr. Chief Justice DeYoung delivered the opinion of the court:

Mike Kurant, Frank Kurant and Otto Perfetti were jointly indicted in the circuit court of Madison county for the murder of Paul Budde on June 19, 1927. Frank Kurant and Perfetti were arrested on the next day. Mike Kurant was not apprehended until January 2, 1928. Frank Kurant pleaded guilty and was sentenced to the penitentiary for thirty years. Perfetti had a jury trial. By the jury's verdict and the court's judgment his punishment was fixed at fourteen years in the penitentiary. Mike Kurant pleaded guilty and was later sentenced to death. He prosecutes this writ of error.

The plaintiff in error was arraigned on January 13, 1928. The record shows that he was furnished with a copy of the indictment and a list of the witnesses but not of the jurors; that he pleaded guilty; that the court admonished him of the consequences of his plea but that he persisted in it, and that the court thereupon appointed R. Guy Kneedler to defend the plaintiff in error and fixed January 23, 1928, as the day for hearing the evidence. Kneedler was

not present in court at the time of his appointment and received notice of it three days later. On the 22d day of January the trial judge amplified the record of the proceedings on January 13 to read as follows: "In order that the correct facts may be in the record as to what actually transpired, I might say the State's attorney read at length the indictment in the case, and the defendant, Mike Kurant, when asked by the court, said he wanted to plead guilty, and when asked about a jury trial he said he wanted to plead guilty and throw himself on the mercy of the court. As I remember, that was his statement, and when told of the punishment under the plea, of death by hanging, life imprisonment or no less than fourteen years, he still wished to plead guilty. Also that the defendant was arraigned with twelve other persons on that day, the twelve all having been arraigned previous to the time the prisoner, Mike Kurant, was arraigned. Eight of the defendants pleaded guilty and were sentenced to the Southern Illinois Penitentiary or to the Illinois State Reformatory, at Pontiac. Four of the defendants pleaded not guilty to felonies and counsel was appointed for them in each particular case. The defendant was asked if he had a lawyer, and he stated he did not; that he desired to enter a plea of guilty here."

The plaintiff in error on the next day filed a motion to withdraw his plea of guilty and to quash the indictment. The motion was supported by the affidavit of the plaintiff in error. Counter-affidavits were filed by the prosecution. The motion was denied. On January 28, 1928, a motion was made by the plaintiff in error to withdraw his plea of guilty and to enter a plea of not guilty. The grounds upon which this motion was based were that the plaintiff in error was a poor person without funds to employ an attorney and that he did not know that the court had the power to appoint an attorney to defend him; that on January 13, 1928, he was arraigned without an opportunity to

have counsel and without advice concerning his legal rights and the consequences of a plea of guilty, and that he entered such a plea in complete ignorance of his rights; that his plea was induced by the State's attorney and the sheriff, who informed him that they would prevail upon the court to impose a short sentence; that he believed their representations were true; that he was innocent of the charge laid in the indictment, and that he desired a trial by jury in order that he might offer his defense and that justice might be done. The plaintiff in error supported the motion by the affidavit upon which he had based his motion to withdraw his plea of guilty and to quash the indictment. In this affidavit, in addition to the facts stated in the motion, he set forth that when he was arraigned he was in a nervous condition and did not know what plea was entered in his behalf; that he did not fully understand the court's advice and instructions; that his plea was obtained by the solicitation of the sheriff and the State's attorney; that on the evening of the day he was arrested he was taken from his cell to the office of the county jail, and the sheriff there advised him the best thing he could do would be to plead guilty; that the sheriff said he was the deponent's friend, and if such a plea were entered he would use his influence with the judge to have him sentenced for the shortest term possible; that the sheriff also said Frank Kurant and Perfetti had accused the deponent of the crime, and that any court or jury would believe them regardless of what he might say and that he would be convicted. The plaintiff in error further alleged in his affidavit that Alvin C. Bohm was present and said that he was the former's friend; that he had influence with the court, and if the plaintiff in error would confess that he shot Budde, he, Bohm, would intercede in the deponent's behalf and in that event was convinced he would receive a very short sentence; that the plaintiff in error told the sheriff and Bohm he was not guilty and would not confess or plead guilty; that after consider-

able discussion Bohm went to a desk and said, "Mike, I know all about this whole affair, as I know what your brother Frank and Otto Perfetti said; I'll write this down on some paper and you sign it and I know you will come out all right;" that while Bohm was engaged in writing, the sheriff insisted that the plaintiff in error follow their advice, because, he said, the deponent had no defense and because he had a wife and four children and for their sake he should try to receive the shortest sentence possible; that if tried by a jury, he would certainly be convicted and sentenced for a long term or possibly be hanged or electrocuted, and that Bohm added that juries in Madison county were disposed to convict, and that shortly before a man who had a jury trial was found guilty and hanged. It is further alleged in the affidavit that in reply to these representations the plaintiff in error maintained that he was not guilty and wished to consult an attorney, in order that he might be advised what to do; that Bohm asked him whether he had any money to employ an attorney, and upon receiving a negative answer said, "You are in a bad fix if you can't employ some lawyer to represent you and you had better take our advice;" that when Bohm finished writing he handed the paper to the plaintiff in error to read but he could not read the writing; Bohm then asked him to sign his name, saying, "Mike, just sign your name there and you will be all right; we'll have you appear before the court as soon as possible and enter a plea of guilty and I'm sure you will get a very short sentence, and it will be the best thing you can do;" that the paper was not read to him but that on Bohm's advice he signed it, and that he did not know what it contained until later, when his attorney read it to him; that all the statements in the writing with reference to the shooting of Budde were false; that the only questions Bohm asked him were concerning some dates, his age, and where he had been since June 19, 1927; that the plaintiff in error was not advised concerning his constitu-

tional rights before he signed the confession; that when he was arraigned and entered a plea of guilty he was convinced that he would receive a short sentence in the penitentiary; that he did not remember the judge's advice or instructions, except a question put to the State's attorney, whether, at the time, a death sentence would be executed by hanging or electrocution; that this question so startled him that he begged for mercy, and the judge then appointed an attorney to represent him, and that after consulting with his lawyer he asked the court to be allowed to withdraw his plea of guilty.

The prosecution replied to the motion asserting that the plaintiff in error understood his rights when he entered his plea of guilty in the instant case, because in 1921, upon an indictment for robbery, he was arraigned, pleaded not guilty and was acquitted; that the plaintiff in error was a man of mature age, familiar with the English language and fully understood the nature of the charge made against him prior to the time he entered his plea of guilty; that the court informed him of the consequences of his plea and by his answers he showed that he was aware of those consequences, and that, fully advised of his constitutional rights, he voluntarily confessed that he was guilty of the crime charged against him. The confession was set out in the reply. The counter-affidavits upon which the prosecution relied in resisting the motion of the plaintiff in error to withdraw his plea of guilty and to quash the indictment were re-filed in opposition to the present motion. These affidavits were made by Charles Hazzard, the jailer, Otto H. Hermann, the sheriff, and Alvin C. Bohm, the State's attorney, and concerned the meeting in the office of the county jail at which the plaintiff in error made and signed the confession. Each deponent stated that Bohm told the plaintiff in error that any statement he made might be used for or against him; that if he was unable to employ an attorney the court would appoint one to defend him and that he was entitled

to a trial by jury; that the plaintiff in error replied that he did not want an attorney, because his brother Frank and Perfetti had told all about the crime and there was nothing for him to do but to plead guilty, and that Bohm, after writing the confession, read it to the plaintiff in error, and that after hearing it read the latter voluntarily signed it. The charges made by the plaintiff in error in his affidavit were specifically denied.

The prosecution also offered the counter-affidavit of Gottlieb Willaredt, Jr., a farmer and president of a board of school directors. In his affidavit he stated that he was present in the court room on January 13, 1928, and saw thirteen or fourteen prisoners arraigned; that about eight entered pleas of guilty prior to the plaintiff in error and in each case the judge explained to the prisoner his right to a jury trial, if requested, and the degree of punishment that might be inflicted upon him; that the court did not in any case accept a plea of guilty until the prisoner stated that he fully understood the consequences of his plea; that plaintiff in error was the last prisoner arraigned; that he appeared to be cool and deliberate, and after a copy of the indictment had been furnished and read to him the judge asked, "What is your plea, guilty or not guilty?" that he answered, "Guilty; I throw myself upon the mercy of the court;" that the judge further inquired whether he wanted a trial by jury, and the plaintiff in error again answered, "I am guilty;" that the judge then informed him that the punishment for murder might be death or imprisonment in the penitentiary for any number of years from fourteen upwards and asked whether he persisted in his plea, and that the plaintiff in error once more answered, "I plead guilty."

When the counter-affidavits, four in number, were presented, counsel for the plaintiff in error requested a postponement of the hearing of the pending motion on the ground that he had been afforded only thirty minutes within which to examine the affidavits. The motion for a post-

ponement was denied. The motion of the plaintiff in error to withdraw his plea of guilty and to enter a plea of not guilty was also denied. There followed, successively, motions by the plaintiff in error to file additional affidavits and for a change of venue. Both of these motions were denied.

Immediately after the disposition of the foregoing motions the court heard the testimony of witnesses concerning circumstances in aggravation or in mitigation of the offense. From the testimony of Sadye Findley it appeared that on the evening of June 19, 1927, she and Paul Budde, both twenty-four years of age, drove in an automobile from Alton to Edwardsville and were returning to Alton by way of Mitchell. When they reached a point about three miles north of Mitchell the automobile was stopped and its occupants engaged in conversation. In a few minutes, at about 10:30 o'clock, two men with revolvers and flashlights approached the automobile. One pointed a revolver at Budde's side while the other ordered him from the automobile and pulled him out by the coat. Shots were fired and Miss Findley jumped out of the car. When she first saw Budde he was standing, but when she looked again he was lying face downward on the ground. She picked him up, placed him in the automobile and then sought assistance. An ambulance was called, the coroner notified and the body removed to Alton. Miss Findley did not know who killed Budde.

Otto Perfetti testified that about nine o'clock in the evening of the same day he met Mike and Frank Kurant in Maryville; that they asked him to take a ride; that they drove through Mitchell, turned north, and, after crossing a bridge, Mike Kurant, observing Budde's automobile, said, "Let's pull in and go get these lovers;" that Mike and Frank Kurant left the car; that he heard certain shots and drove away, and that he left the car about two miles from Maryville and reported to the police that it had been stolen.

Sheriff Hermann testified that at the time plaintiff in error confessed, in writing, his participation in the crime

he was advised of his constitutional rights. When asked, on cross-examination, to define these rights, he answered that his understanding of them was that anything plaintiff in error might have said at the time could be used for or against him. He added that while he was present and heard all that was said when the confession was taken, he had no recollection that any other advice or information was then given the plaintiff in error. Deputy sheriffs Joseph Colone and Frank Spindler testified that they accompanied the plaintiff in error, shortly after his arrest, to a point on the road where he said he had concealed a revolver and flashlight. Neither the weapon nor the light was found. On the way the plaintiff in error told these officers that he would not have shot Budde if the latter had not shot first.

The confession signed by the plaintiff in error set forth that he, his brother Frank and Perfetti, driving in an automobile, stopped when they discovered Budde's car standing on the side of a cross-road; that the two brothers went to that car for the purpose of getting money; that Frank Kurant had a revolver which would not discharge; that plaintiff in error told Budde to get out of the car, but the latter reached for his right pocket, whereupon plaintiff in error exclaimed, "Look out! He has a gun in his pocket!" that Budde left his car, stepped back and shot three times, first at Frank Kurant and then at the plaintiff in error, and that the latter followed by firing three shots, the first while Budde stood to the rear and the other two while he stood to the left of his car. The confession was admitted in evidence over the objection of the plaintiff in error.

The foregoing is the substance of the material evidence offered by the prosecution.

The defense called Frank Kurant as a witness but he refused to testify. No evidence was offered in behalf of the plaintiff in error. His counsel made a motion in arrest of judgment but it was denied. The court on January 28, 1928, found the plaintiff in error guilty of murder as

charged in the indictment and sentenced him to be hanged on the 18th day of February. Motions by the plaintiff in error to vacate the judgment and sentence and all orders upon which they were based, and to withdraw the plea of guilty, followed the rendition of the judgment. These motions were denied.

Twenty-six errors are assigned. It will be necessary, however, only to consider, first, whether the plaintiff in error was sufficiently informed of his rights before he received the advice of counsel; second, whether he should have been permitted to change his plea; and third, whether his counsel was given sufficient time within which to prepare his defense.

From the affidavits offered by the prosecution in resisting the motion by the plaintiff in error to withdraw the plea of guilty and to substitute a plea of not guilty, it appears that at the meeting in the office of the county jail at which the plaintiff in error signed the written confession the State's attorney told him that any statement he made might be used for or against him; that if he was unable to employ an attorney the court would appoint one to defend him, and that he was entitled to a trial by jury. These affidavits are in conflict with the affidavit of the plaintiff in error. The sheriff was one of the deponents. He was present throughout the meeting at which the confession was obtained. When he appeared later as a witness he testified that the plaintiff in error was, at the time, advised of his constitutional rights, which, as he understood them, consisted of the statement that anything the plaintiff in error might say could be used for or against him. Willaredt, who was in court on January 13, when the plaintiff in error and other prisoners were arraigned, did not state in his affidavit that the court informed the plaintiff in error of his right to appear and defend by counsel. The amplified record of the proceedings of January 13 concludes: "The defendant was asked if he had a lawyer, and he stated

he did not; that he desired to enter a plea of guilty here." Nothing in that record indicates that the court informed the plaintiff in error that he had the right to be defended by counsel. The record affirmatively shows that he was not represented when he pleaded guilty and that counsel was not appointed to defend him until after his plea was entered.

Section 9 of the bill of rights provides that "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation and to have a copy thereof, to meet the witnesses face to face, and to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." A privilege most important to a person accused of crime, connected with his trial, is to be defended by counsel. (1 Cooley's Const. Lim.—8th ed.—p. 696.) If an accused person is to have counsel he should be in a position to make a complete defense. (State v. Davis, 44 L. R. A. (n. s.) 1083, and note.) The arraignment and plea of the defendant are properly the first steps in the progress of a trial upon an indictment for a felony. (Parkinson v. People, 135 Ill. 401.) The plea can only be entered after the accused has been fully advised by the court of his rights and the consequences of his plea. People v. Fulimon, 308 Ill. 235.

It is apparent that the plaintiff in error, after the appointment of counsel, had an understanding of his rights which differed essentially from his conception of them at and prior to the time he pleaded guilty. The motion to withdraw his plea and to substitute one that he was not guilty, his affidavit, and his application for leave to file additional affidavits in support of that motion, indicate that if he had received the advice of counsel in apt time a defense to the charge in the indictment would have been interposed. Whether his defense before a jury would have

availed him is for the present purpose immaterial. The law provides one mode of trial, and it is the same for the innocent and the guilty. (*People* v. *Sweetin,* 325 Ill. 245.) The fact that an accused person on the trial may be shown to be guilty is not of itself sufficient reason to deny him a full opportunity to present, through counsel, such defense as he may have to the charge. (*People* v. *Lavendowski,* 326 Ill. 173.) Moreover, it cannot be assumed that a verdict of guilty will necessarily result in fixing the punishment at death. If guilty, the degree of punishment which shall be inflicted, particularly in a capital case, is a matter which an accused person has a right to have determined in the manner provided by law, and it is the duty of the courts to safeguard that right. (*People* v. *Heffernan,* 312 Ill. 66; *People* v. *Meisner,* 311 id. 40; *People* v. *Lane,* 300 id. 422; *Farris* v. *People,* 129 id. 521.) The proceedings in behalf of the plaintiff in error which immediately followed the appointment of counsel tend to show that he did not understand that he was guaranteed the right to appear and defend by counsel and that he did not fully appreciate the consequences of his plea at the time it was made.

Section 1 of division 13 of the Criminal Code provides that every person charged with treason, murder or other felonious crime shall be furnished, previous to his arraignment, with a copy of the indictment and a list of the jurors and witnesses. Owing to the absence of jurors at the particular time no such list was furnished the plaintiff in error. It was apparently assumed, before counsel was appointed to defend him, that he would not have a trial by jury.

Permission to change a plea of guilty to one of not guilty is a matter within the trial court's discretion, and the court's action will not ordinarily be disturbed. Where, however, it appears that a defendant has pleaded guilty under a well-founded misapprehension of the consequences of his plea, or where the ends of justice will be best served by permitting a plea of guilty to be changed to a plea of not guilty,

the trial court should grant the request. (*People* v. *Lavendowski, supra; People* v. *Byzon,* 267 Ill. 498; *People* v. *Walker,* 250 id. 427; *Krolage* v. *People,* 224 id. 456, and note in 8 Ann. Cas. 238; *Gardner* v. *People,* 106 id. 76.) The law favors a trial upon the merits by a jury. (*Krolage* v. *People, supra.*) The motion to withdraw the plea of guilty in the instant case was made immediately after counsel was appointed to defend. Under the facts shown it should have been allowed.

Counsel received notice of his appointment to defend the plaintiff in error on the sixteenth day of January. Twelve days later plaintiff in error was sentenced to death. Counsel sought with diligence to withdraw the plea of guilty, but owing to other prior professional engagements was unable properly to prepare his defense within the time allowed and made a motion for a continuance. That motion was denied. The trial court's duty to assign competent counsel to defend an accused person who is unable to employ one is not intended to be a mere empty formality, and the counsel thus appointed should not be compelled to act without being allowed a reasonable time within which to understand the case and to prepare the defense. (*People* v. *Bopp,* 279 Ill. 184; *North* v. *People,* 139 id. 81.) Under the facts shown, appointed counsel was denied a reasonable opportunity to investigate the instant case and to prepare the defense of the plaintiff in error.

The judgment of the circuit court of Madison county is reversed and the cause is remanded to that court for a new trial. *Reversed and remanded.*