(No. 20044.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* REX CARZOLI *et al.* Plaintiffs in Error.

*Opinion filed October 25, 1930.*

JOHN F. CASHEN, JR., for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. Justice DeYoung delivered the opinion of the court:

An indictment was returned in the criminal court of Cook county against Rex Carzoli and Albert Walz. The indictment consisted of twenty-seven counts, three of which charged kidnaping, sixteen kidnaping for ransom, six extortion by threats and two extortion. The defendants' pleas were not guilty, but when the prosecution's evidence had been introduced, they changed their pleas to guilty. The jury was thereupon withdrawn and the court sentenced each of the defendants to the penitentiary for life. By this writ of error they seek a review of the proceedings which resulted in their conviction.

Five errors are assigned and argued by the plaintiffs in error, but it will be necessary to consider only the contention that the trial court erred in denying their motion to vacate the judgment and to allow them to withdraw their pleas of guilty.

The evidence on behalf of the prosecution is, in substance, as follows: Joseph Wadycki, seventeen years of age, was about to enter his home at noon on September 15, 1928, when he was stopped by Rex Carzoli who accused him of stealing alcohol from a garage where Wadycki had been employed. Wadycki accompanied Carzoli to the garage and they waited in the office until a man named Chess entered. Chess and Carzoli forced Wadycki into an automobile and they drove to a certain hotel, entered through a side or alley entrance and went to a room on the main floor. Later in the day Albert Walz and Max Downey arrived. Downey identified Wadycki as one of the boys who, with himself, had stolen alcohol from the garage. Wadycki, upon denying the charge was beaten, struck with the end of a revolver and rolled on the floor. Chess and Carzoli left the room for a short time. Wadycki asked Downey what alcohol was the subject of inquiry and Downey advised him to admit the theft. Chess and Car-

zoli returned to the room and began beating Wadycki again. They pointed a revolver at him and threatened to take his life if he did not disclose where the stolen alcohol was kept. Wadycki then admitted the theft and one of the men told him he would have to pay for the alcohol. He answered that he had no money since he was not employed but that he would try to borrow it from his father. About midnight Walz took Wadycki home and when the latter's father opened the door Walz requested the son to tell his father what he had admitted at the hotel. Wadycki told his father that he and another person had stolen some alcohol; that he owed $50 for it and that, if his father would lend him the money, he would work to re-pay it. The father answered that he did not have the money. Walz replied that he would kill the boy if the sum specified were not forthcoming. The father then asked that his son be left at home and that Walz return the next day to ascertain what he, the father, could do. Walz returned as requested, and the father then told him that he would receive his wages three days later and that he would pay him on that day between 5:30 and 6:00 o'clock. About the appointed time Carzoli and another person appeared and the father paid $50 to the third person and took his receipt for the money.

Nearly six months later, about February 22, 1929, Carzoli again called at the home of the elder Wadycki and informed him that his son had been accused of stealing alcohol a second time and that it would require $100 to settle the matter. Wadycki asked when his son took the alcohol and Carzoli answered about two or three weeks previously. Wadycki replied that it was impossible his son could be guilty of the theft because at that time he was employed at night. Carzoli asserted that he had a witness who saw Wadycki's son take the alcohol. Wadycki requested Carzoli to return the next day. The police department was notified; at the appointed time Carzoli appeared and renewed his demand upon Wadycki for $100 and two

police officers, who had hidden in the house, came forward
and arrested Carzoli. He was taken to a police station and
signed a statement admitting that the charge against Joseph
Wadycki was only a pretense to obtain money. Carzoli im-
plicated Walz in the crime and the latter was arrested in a
rooming house the next day. Walz also signed a statement.
Carzoli was nineteen and Walz was twenty-four years of
age and neither had ever before been charged with a crimi-
nal offense.

Upon the question whether the statements had been vol-
untarily made, Carzoli testified that the police officers beat
and kicked him and struck him with a revolver and a black-
jack. Walz testified that he was threatened by the officers,
and that one of them used a black-jack to strike him on
the neck and back. Each testified that if he denied doing
what a question propounded by one of the police officers
implied, the officer would ask Joseph Wadycki whether it
had been done and if he answered in the affirmative, the
stenographer was directed to write the answer as that of
the plaintiff in error interrogated. The officers accused de-
nied that they had used force to obtain the statements.

The admission of the statements concluded the intro-
duction of the prosecution's evidence and counsel for the
plaintiffs in error thereupon stated that his clients desired
to withdraw their pleas of not guilty and to plead guilty.
The trial judge remarked that the pleas of guilty, if made,
would have to be entered to the whole indictment; that the
plaintiffs in error must decide the question at once because
otherwise he would be required to postpone the trial to
attend a meeting of judges in another part of the city, in
which event he would return to dispose of the case that
day even if it required a session during the afternoon and
evening. The judge further remarked that kidnaping was
punishable by death. Carzoli answered that the offense
proved was not kidnaping for ransom. The judge replied
that he had heard the evidence; that it was a capital case·

and that, if the jury returned a verdict fixing the punishment at death, he would not disturb it. Walz then stated that he was not implicated in any kidnaping charge but only in the offense of extortion. Answering him, the judge said: "The testimony is that you went to the place of kidnaping at the Rosette Hotel at about 2:30 in the afternoon of the day that the complaining witness here, Joseph Wadycki, was taken in a Chrysler sedan at 12:30." Walz started to say "I didn't go," but was interrupted by the judge's statement that if he pleaded guilty he must do it as his voluntary act with the understanding that no promise had been made to him and with the warning that the punishment prescribed by the statute might be imposed. Walz iterated that he was not guilty of kidnaping, but that he would plead guilty to the charge of extortion. The judge replied that only the plea of guilty to the indictment would be entertained. Walz reiterated that he had no part in any kidnaping; that his plea to that charge was not guilty, but that to the charge of extortion he would plead guilty. The judge then told Walz that his case would stand on the plea of not guilty. To the judge's inquiry whether he wanted to enter a plea of guilty, Carzoli answered that he did. Walz then said that if Carzoli entered such a plea, he too would do so. To the judge's further inquiry whether any promise had been made both plaintiffs in error answered in the negative. The judge then said: "The court has advised you what these sentences may be. You have heard the court tell you what the statute provides. Is this plea of guilty to become your plea?" The plaintiffs in error replied in the affirmative. The jury was then discharged and the court sentenced each plaintiff in error to the penitentiary for life. In sentencing them, the judge, among other things, said: "If these young men had records, I would have sent them to the electric chair unhesitatingly. * * * In one notable case in this jurisdiction, I went so far as it was humanly possible for any judge to go, where

kidnaping of a child was involved, and had the power been mine, I would have sent the man in question to his death without any question.  \*  \*  \*  When they come over to this community, whether the man is a lawbreaker or any other man, no matter how loud his cry may be outside this court, when he comes here he is going to find that justice isn't afraid of him or his racket or his gang."

Within a few days after the sentences had been pronounced, counsel who now represents the plaintiffs in error entered his appearance in their behalf in the trial court and made a motion, supported by a petition and affidavits, to vacate the judgment.  From the affidavits of the attorneys who represented the plaintiffs in error prior to that time, it appears, among other things, that they were practically without experience in the trial of criminal cases and that, after the prosecution's evidence had been introduced, the trial judge invited counsel for the prosecution and defense to his chambers and there said that it would be futile to proceed because the jury would fix the punishment of the plaintiffs in error at death, and the judge inquired why they should not be given a chance to plead guilty.  The affidavit of Walz discloses that he entered the plea of guilty to the indictment through fear that otherwise he would be sentenced to death.  Carzoli, in his affidavit, sets forth that he pleaded guilty after his attorney informed him that the trial judge had said the jury would fix death as his punishment.  The court stated that the petition and affidavits were not in accordance with the facts and refused to permit them to be filed.  The motion to vacate the judgment was denied.

The act to prevent and punish kidnaping for ransom (Cahill's Stat. 1929, pp. 956, 957; Smith's Stat. 1929, pp. 1020, 1021), provides: "That every person who shall willfully, unlawfully and forcibly seize and secretly confine within this State,  \*  \*  \*  any person against his will  \*  \*  \*  for the purpose of extorting ransom or money

or other valuable thing or concession from such person, * * * shall, upon conviction, suffer death, or be punished by imprisonment in the penitentiary for life or any term not less than five (5) years." * * * By section 166 of the Criminal Code (Cahill's Stat. 1929, p. 956; Smith's Stat. 1929, p. 1020), the punishment for kidnaping not for ransom or money is imprisonment in the penitentiary for a term of not less than one year and not exceeding five years, or a fine not exceeding $1000, or both. The punishment for extortion by threats is a fine not exceeding $500 and imprisonment not exceeding six months. (Criminal Code, sec. 93; Cahill's Stat. 1929, p. 934; Smith's Stat. 1929, p. 997). The twenty-seven counts of the indictment therefore charged offenses of various grades for which the punishments ranged from a minimum fine and term of imprisonment to death itself. The sentences imposed by the trial court show that the plaintiffs in error were convicted of kidnaping for ransom.

When counsel announced that the plaintiffs in error desired to change their pleas from not guilty to guilty, the trial court required them either to plead guilty to all the charges laid in the several counts of the indictment or to proceed with the jury trial. Carzoli thereupon told the court that the offense proved was not kidnaping for ransom. Walz was not present when Joseph Wadycki was taken from the garage to the hotel. He arrived later, heard Wadycki questioned about the theft of the alcohol and accompanied him to his home late at night. Walz repeatedly stated to the court that he had no part in and was not guilty of kidnaping, but that he was willing to plead guilty to the charge of extortion. Apart from the question whether the prosecution's evidence showed the plaintiffs in error guilty of kidnaping for ranson, it is apparent that when they pleaded guilty to the whole indictment they did not do so freely and unreservedly.

Section 4, division 13, of the Criminal Code (Cahill's Stat. 1929, p. 997; Smith's Stat. 1929, p. 1065) provides that "In cases where the party pleads 'guilty,' such plea shall not be entered until the court shall have fully explained to the accused the consequences of entering such plea; after which, if the party persist in pleading 'guilty,' such plea shall be received and recorded, and the court shall proceed to render judgment and execution thereon, as if he had been found guilty by a jury. In all cases where the court possesses any discretion as to the extent of the punishment, it shall be the duty of the court to examine witnesses as to the aggravation and mitigation of the offense." The statute contemplates not only a full explanation by the court of the consequences of entering the plea of guilty, but the accused person must persist in the plea before it can be received and recorded. The defendants at the bar were two young men, one nineteen and the other twenty-four years of age, neither of whom had previously been charged with a criminal offense; and they were represented by inexperienced counsel. The trial judge announced that if pleas of guilty were to be entered in the instant case, they would not only be required to every count in the indictment, but, because he was about to attend a meeting of judges, the decision upon the question whether they would be entered must be immediate. There was no full explanation of the consequences of entering such pleas. A consideration of all the facts and circumstances convinces us that the plaintiffs in error pleaded guilty to the whole indictment without an adequate understanding of the nature and gravity of the charges against them or of the consequences of the pleas which they entered.

The fact that on a trial the plaintiffs in error may be found guilty is not of itself a sufficient reason to deny them the right, upon a proper showing, to withdraw their pleas of guilty and to enter pleas of not guilty. (*People* v. *Kurant*, 331 Ill. 470). Leave to withdraw a plea of guilty

should be granted where it appears, among other reasons, that the plea was entered through misapprehension of the facts or the law, or where the ends of justice will best be served by permitting a plea of not guilty in its stead. *People* v. *Bonheim*, 307 Ill. 316; *People* v. *Kleist*, 311 id. 179; *People* v. *Ensor*, 319 id. 255; *People* v. *Lavendowski*, 326 id. 173; *People* v. *Byzon*, 267 id. 498; *People* v. *Walker*, 250 id. 427; *Krolage* v. *People*, 224 id. 456; *People* v. *Kurant, supra.*

The trial court should have vacated the judgment and allowed the plaintiffs in error to withdraw their pleas of guilty. Accordingly the judgment of the criminal court of Cook county is reversed and the cause is remanded to that court.

*Reversed and remanded.*