(No. 25270.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM T. DENNING, Plaintiff in Error.

*Opinion filed December 12, 1939—Rehearing Petition Stricken February 7, 1940.*

HARRY I. HANNAH, and THOMAS R. FIGENBAUM, (ROGER FRUIN, of counsel,) for plaintiff in error.

JOHN E. CASSIDY, Attorney General, JEWELL I. DILSAVER, State's Attorney, and A. B. DENNIS, (WILLIS P. RYAN, of counsel,) for the People.

Mr. CHIEF JUSTICE WILSON delivered the opinion of the court:

On January 30, 1939, the defendant, William T. Denning, was indicted in the circuit court of Coles county for maliciously burning broomcorn and other personal property of John L. Denning & Company, Inc., with the intent of defrauding the St. Paul Fire and Marine Insurance Company, the insurance carrier. He was arraigned on February 2, and moved to quash the indictment. Thereafter, on March 30, the defendant obtained leave to withdraw the motion to quash and pleaded guilty. The court admonished him as to his rights and explained the consequences that might result from the plea of guilty but he persisted in it. Defendant's application for probation made at the same time was referred to the county probation officer and the cause continued to enable the officer to complete his investigation. The report, filed on April 12, contained twenty-three statements, addressed to the probation officer but which had been solicited by defendant and his counsel, and turned over to the officer. Of these statements, twenty-one favored probation and two opposed it. The officer did not, however, make a recommendation either for or against probation. Upon examining the report, the trial judge summoned one of defendant's attorneys and the State's attorney into his chambers where he indicated his intention of denying the application. When court convened defendant made a motion for leave to withdraw the plea of guilty and to enter a plea of not guilty. The motion was not considered, however, until the application for probation was first denied. Defendant then renewed the motion to withdraw his plea and asked leave to file a written motion. This motion was denied and the cause continued until April 15 for sentence. On the day last named defendant filed a written motion to vacate the order denying probation and again asked to withdraw the plea of guilty. His motion

was supported by eleven affidavits seeking to show that he was led to believe he would obtain probation upon his plea of guilty. On April 20, the People introduced evidence in rebuttal of the written motion of April 15, and at the conclusion of the hearing the court overruled defendant's motion. The action of the court in refusing to grant probation was an act of discretion not subject to review by this court. (*People* v. *Racine,* 362 Ill. 602; *People* v. *Bonheim,* 307 id. 316.) A motion in arrest of judgment was overruled and defendant was then sentenced to imprisonment in the penitentiary. He prosecutes this writ of error to obtain a review of the record.

The sole issue presented for decision is whether the trial judge abused his judicial discretion in refusing the defendant permission to withdraw his plea of guilty and to enter a plea of not guilty. From the affidavits and the evidence introduced upon the hearing of defendant's motion the following pertinent facts and circumstances appear. Defendant, a married man, thirty-nine years of age, at the time of the fire which was the basis of the return of the indictment against him, was the manager of a broomcorn warehouse for John L. Denning & Company, Inc., at Mattoon. He is a brother of John L. Denning, the president of the company, the principal office of which is located in Wichita, Kansas. The fire occurred on the night of January 3 and 4, 1939, and for more than ten days thereafter defendant was absent from the city of Mattoon. During his absence the State's attorney summoned Donald Knight, the operator of a tavern, to his office to ascertain whether he knew the whereabouts of defendant, who, it appears, was indebted to Knight for a large sum of money, representing gambling losses. On several occasions prior to defendant's return to Illinois, Knight inquired of the State's attorney with respect to his attitude concerning this case, and, in particular, whether he would recommend probation. According to the testimony of Knight, the State's attorney

repeatedly said that he would not recommend probation but, on the other hand, would not oppose it. During this period Knight conferred with defendant at LaFayette, Indiana. Defendant and his wife each alleged that on this occasion Knight informed them that if the defendant would come in and plead guilty only one charge would be preferred against him and, further, that the State's attorney would recommend probation. The foregoing version of the conference at LaFayette was categorically denied by Knight. From the affidavit of John Morrison, defendant's father-in-law, it appears that Knight had a conference with him and his daughter prior to defendant's return to this State at which Knight announced he was bringing defendant into the State's attorney's office, and that he was to plead guilty, whereupon the State's attorney would recommend probation. January 16, attorney Harry I. Hannah advised the State's attorney that he and attorney Thomas R. Figenbaum had been employed to represent defendant. The latter returned to Mattoon the next day, January 17, and appeared with attorney Hannah before police Magistrate Morgan Phipps to answer to a warrant which had been issued on a complaint charging him with the malicious burning of a building other than a dwelling-house. After the indictment was returned on January 30, and prior to March 30, when the defendant entered his plea of guilty, attorney Hannah consulted with the State's attorney on three different occasions concerning his attitude in the event defendant pleaded guilty. It is conceded that on each of these visits the State's attorney declared he would not recommend probation but, on the other hand, would not oppose it. At one of the first conferences, attorney Hannah inquired as to the possibility of obtaining probation if a plea of guilty were entered to the indictment involved here and if two other indictments charging (1) the malicious burning of a building other than a dwelling-house and (2) the malicious burning of personal property were *nolled,*

suggesting that the People did not have a very strong case and could not prove a motive. The State's attorney expressed doubt, according to Hannah, not only as to the ability of the People to convict the defendant because the indictment was based on circumstantial evidence but also as to whether he could prove a motive, and, for these reasons, said he would not oppose probation and would agree to *nolle* the other two indictments. Attorney Hannah alleged in his affidavit that the State's attorney agreed to inquire whether the fire marshal of the State had any objection to defendant being admitted to probation and later advised the affiant that he had ascertained there was no objection on the part of the fire marshal's office. When the plea of guilty was entered and probation sought the State's attorney announced that neither he nor the State fire marshal's office had any objection thereto.

Other facts and circumstances require recounting. Shortly before the entry of the plea of guilty Knight conferred with defendant and his wife at their place of residence. Knight, it affirmatively appears, was desirous of obtaining from them a release from civil liability for such claim as they might have against him incident to the gambling losses suffered by defendant. In their affidavits defendant and his wife alleged that on the occasion of Knight's visit he declared he would procure from the State's attorney the probation of the defendant if he pleaded guilty, this promise being contingent, however, upon the execution of a release discharging him from all liability for money lost to him in gambling, and that Knight also stated he would see that probation was denied unless the proposed release was forthcoming. According to them, Knight offered a settlement which defendant was willing to accept but which was unsatisfactory to his wife who refused to join in executing a release. Knight admitted the interview, but stated that he was merely seeking a release and denied making any statements respecting the criminal case, and

specifically, concerning probation. Affidavits of attorneys Hannah, Figenbaum and W. F. Shepherd, the latter their associate, relate, in part, to visits of Knight to their law office where it is alleged, that he stated he was in a position to procure the probation of the defendant through the State's attorney provided defendant first released him, Knight, from all liability for gambling losses, and, further, that unless he was given a release he would see that probation was not granted.

It further appears that prior to the day defendant pleaded guilty two persons, police magistrate Phipps and Louis Weiss, a resident of Mattoon, with the acquiescence if not at the instance of counsel for defendant, called upon Hon. Grendel F. Bennett, a judge of the circuit court, at his home in the city of Marshall, to ascertain if he would give favorable consideration to an application for probation by defendant if he entered a plea of guilty. Both Phipps and Weiss, in their reports of their separate interviews, said that Judge Bennett would make no promise relative to probation other than that he would give impartial consideration to the case which would be handled in the regular manner.

Two members of the grand jury which returned the indictment, L. B. Whitley and Earl Crum, made affidavits to the effect that when the case was before the grand jury the State's attorney expressed doubt as to whether a conviction could be obtained because the evidence was circumstantial and a motive could not be proved but that he, nevertheless, recommended the return of the indictment.

Another reason alleged to have induced defendant and his counsel to believe probation would undoubtedly be granted upon a plea of guilty was the statement of a representative of the insurance company, named in the indictment as having been defrauded, that the company was not interested in prosecuting defendant and had no objection to his probation. Defendant's brother likewise advised

counsel that neither he nor his company desired prosecution and that they did desire probation.

The State's attorney testified that at no time did he authorize Knight to represent him in this case and, in particular, never requested him to talk with the defendant or his attorneys. He testified, further, that his last conversation with Knight concerning the case at bar was on January 14, prior to the day defendant was arrested. Knight specifically denied ever telling counsel for defendant, defendant himself or his wife, that he was an emissary of the State's attorney's office or in a position to obtain probation for the defendant.

Although the court admittedly asked defendant whether he understood that in pleading guilty he might be sentenced to the penitentiary, complaint is now made that the term of the punishment was not stated and, further, that defendant, owing to impaired hearing, did not, in fact, hear the court advise him as to his right to trial by jury or the admonition that if his application for probation was denied he would be sentenced to the penitentiary. Objection to the sufficiency of the admonition and complaint that the defendant did not hear the court's pronouncement was first made after denial of the application for probation. Section 4 of division 13 of the Criminal Code (Ill. Rev. Stat. 1939, chap. 38, par. 732, p. 1212) provides that: "In cases where the party pleads 'guilty,' such plea shall not be entered until the court shall have fully explained to the accused the consequences of entering such plea; after which, if the party persist in pleading 'guilty,' such plea shall be received and recorded, and the court shall proceed to render judgment and execution thereon, as if he had been found guilty by a jury." A recital in the record that the defendant was duly informed of the effect of his plea of guilty shows a sufficient compliance with the statute, the particular words spoken in warning him constituting no part of the record. (*People* v. *Collins,* 353 Ill. 468; *People* v. *Fulimon,* 308

id. 235; *People* v. *Archambault,* 295 id. 266; *Marx* v. *People,* 204 id. 248.) When the record, as here, recites that the defendant was admonished as to the consequences of the plea, it will be presumed, in support of such recital, that the court discharged its duty. (*People* v. *Throop,* 359 Ill. 354; *People* v. *Collins, supra; People* v. *Pennington,* 267 Ill. 45.) Permission to change a plea of guilty to one of not guilty is a matter within the trial court's discretion, and the court's action will not ordinarily be disturbed. (*People* v. *Throop, supra; People* v. *Kurant,* 331 Ill. 470; *People* v. *Stamatides,* 297 id. 582.) Recognized exceptions to the foregoing rule are where it appears (1) that a plea of guilty was entered through a misapprehension of the facts or the law, or in consequence of misrepresentation by his counsel or the State's attorney or someone else in authority; (2) that there is doubt of the defendant's guilt; (3) that he has a defense worthy of consideration by a jury; and (4) that the ends of justice will be best served by submitting the case to a jury. If the record of the present proceeding falls within any of these exceptions the court should have permitted the withdrawal of the plea of guilty and allowed the accused to plead not guilty. (*People* v. *Throop, supra; People* v. *Kleist,* 311 Ill. 179; *People* v. *Byzon,* 267 id. 498; *People* v. *Walker,* 250 id. 427; *Krolage* v. *People,* 224 id. 456.) The mere fact, on the other hand, that an accused, knowing his rights and the consequences of his act, hopes or believes that he will receive a shorter sentence or a milder punishment by pleading guilty than he would upon a trial and conviction by a jury, presents no ground for permitting the withdrawal of the plea after he finds that his expectation will not be realized. *People* v. *Ensor,* 319 Ill. 255; *People* v. *Kleist, supra; People* v. *Bonheim, supra.*

In the present case the record shows that two attorneys of long experience at the bar and of recognized ability represented the defendant prior to the time he was indicted

as well as thereafter; that one of them conferred with the State's attorney concerning the case prior to the indictment and on at least three subsequent occasions, and that, after these conferences and prior to the entry of the plea of guilty two persons were sent to the trial judge in attempts to ascertain his attitude on the matter of granting probation. It is not contended that the State's attorney promised either defendant or his attorneys that he would recommend probation and it is conceded that the trial judge advanced no inducement in this regard. Only the purported hearsay statements of Knight to the defendant, his wife, his father-in-law, and the attorneys, remain to support defendant's contention that he was misled into pleading guilty. Even if it be assumed that Knight made the statements attributed to him, the defendant and his counsel must be presumed to have known that they could not bind the court. Indeed, the record affirmatively discloses that defendant and his counsel did not, themselves, rely upon the alleged hearsay statements, because their affidavits, and those of defendant's wife and his father-in-law, charged Knight with asserting that probation would not be granted unless he was released from civil liability for the gaming losses sustained by the defendant. Admittedly, a release was not given to Knight. In short, defendant seeks to place reliance upon only those statements ascribed to Knight which serve his own purpose. The professed reliance upon some of these alleged statements and the non-reliance upon others is far from impressive. A consideration of all the facts and circumstances leads irresistibly to the conclusion that neither defendant nor his counsel was promised probation in the event he entered a plea of guilty and that they were not misled by representations which reasonably warranted them in believing probation would be granted. On the contrary, they well knew when defendant pleaded guilty that the State's attorney would not recommend probation and that

the court had quite properly declined to promise in advance to give favorable consideration to an application therefor. The record proclaims that defendant and his counsel merely decided it more expeditious for him to plead guilty with the hope of obtaining probation than to have the court or a jury pass upon the fact of his guilt of the crime charged. From the affidavits in support of the motion to change defendant's plea of guilty to one of not guilty, and the evidence introduced at the hearing, it is manifest that the trial judge did not abuse his sound judicial discretion in denying permission to change the plea.

Our attention is directed, however, to defendant's affidavit in which he denied in general terms his guilt of the offense charged in the indictment and expressed his belief that he had a good defense to the charge. His affidavit also alleges that at the time the plea of guilty was entered he understood and believed that if probation were denied, he would have the right to withdraw his plea of guilty, enter a plea of not guilty, and be tried by a jury. A plea of guilty is an admission of every fact charged in the indictment and, as well said in *People* v. *Decker*, 347 Ill. 258, "neither law, reason nor necessity requires proof thereof." The mere fact that the State's attorney may have told the grand jury the evidence against defendant was circumstantial is, of course, immaterial. Circumstantial evidence is legal evidence, and there is no legal distinction between direct and circumstantial evidence so far as their weight and effect are concerned. *People* v. *Francis*, 362 Ill. 247; *People* v. *Martishuis*, 361 id. 178.

The judgment is affirmed. *Judgment affirmed.*