(No. 32754—          Nos. 32868 and 32869—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PERCY KING, Plaintiff in Error.

*Opinion filed November 18, 1953—Rehearing denied Jan. 18, 1954.*

Maxwell, J., specially concurring.

Moore, Wimbish & Leighton, of Chicago, (George N. Leighton, of counsel,) for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, and Arthur F. Manning, all of Chicago, of counsel,) for the People.

Per Curiam: Plaintiff in Error, Percy King, twenty-three years of age, and two codefendants, Arthur Murphy and Theodis Hester, were convicted on pleas of guilty in the criminal court of Cook County, on two indictments, one charging murder and one charging armed robbery, both charges growing out of the same occurrence. At the same time King and Hester pleaded guilty and were convicted and sentenced on a third indictment for a separate and distinct armed robbery charge. Defendant King was sentenced to death on the murder charge and to confinement in the penitentiary on each of the armed robbery charges for a term not less than 199 years nor more than life, such sentences to run concurrently. King alone is here by writs of error to review all three convictions, which have been consolidated in this court.

In the early morning hours of Sunday, October 13, 1951, defendant King, armed with a 410-gauge shotgun, accompanied by Murphy, entered the lobby of the Bellereve Hotel located on Chicago's south side. The night clerk, Joseph Birney, was behind the desk. King ordered Birney to put up his hands, vaulted over the counter and demanded money. He took some from the money drawer and com-

manded Birney to open the safe in the office behind the counter. When told that the safe could be opened only by Brinks, Inc., he struck Birney several times and ordered him to go into a room opening off the lobby, the room of the deceased Helen Benson and her husband Eugene. Mrs. Benson was alone in the room when defendant, Birney and Murphy entered. King demanded money from Mrs. Benson, her husband entered the room, and she ran from the room screaming. King and Murphy followed and when she reached the walk in front of the building the shotgun was discharged, Mrs. Benson received the charge in the left side of her face and died shortly thereafter. King and Murphy ran to their car where Hester had waited for them and escaped to their homes. All three were subsequently apprehended and signed written statements admitting all the facts. The defendant, in his written statement to the police and in his testimony at the trial stated that he tripped over an obstruction as he was running from the hotel and the gun was accidentally discharged.

All three were indicted for the murder and for armed robbery. Upon arraignment on the murder indictment counsel for King and Murphy advised the court that their clients were remorseful, wanted to tell the truth and wanted to plead guilty. Defendant Hester was granted a separate trial on his plea of not guilty.

On July 21, 1952, the court, after advising them of their legal rights and admonishing them of the consequences, accepted the pleas of guilty to the murder indictment by King and Murphy. Immediately thereafter the court accepted defendant King's plea of guilty to both the armed robbery indictments, one of which was an occurrence separate and distinct from the occurrence which resulted in the murder indictment. Murphy also pleaded guilty to the armed robbery associated with the murder. He was not a defendant in the separate robbery indictment. The court thereupon continued the hearing in aggravation

and mitigation and the sentencing of King and Murphy, and called a jury for the trial of Hester on the murder indictment.

On the following day Hester withdrew his plea of not guilty, entered a plea of guilty to the murder indictment, which was accepted by the court, a juror was withdrawn and the jury discharged. Hester then pleaded guilty to both armed robbery indictments, and the court announced that the cause would be continued to 2:00 P.M. of that day, at which time he would hear evidence in aggravation and mitigation in the murder case. Evidence was heard, at the conclusion of which the court sentenced defendant King to death and Murphy and Hester to 199 years imprisonment. Counsel for defendant King immediately stated to the court that he wanted to make a motion to vacate the judgment and for a new trial. The trial judge then announced that he would enter the formal orders on the following day, hear the motions and sentence the defendants on the armed robbery pleas.

At noon on the following day, Wednesday, July 23, 1952, counsel for King moved for a continuance to the following Tuesday, July 29. This motion was denied and counsel was required to proceed with his argument on the motion. Defendants Murphy and Hester having filed similar motions, the court heard arguments of counsel for all the defendants and also heard evidence on said motions. The motions of Murphy and Hester were granted, Murphy's sentence of 199 years was reduced to life imprisonment, and Hester's sentence was reduced to 60 years. King's motion was denied and an order was entered imposing the death sentence.

Defendant's serious objections raised here are that the trial court erred in denying his motion because his plea was entered in reliance upon the State's Attorney's promise of leniency; that the State's Attorney misled his counsel to believe a plea of guilty would save his client's life; that

his counsel mistakenly advised him to plead guilty and the State's Attorney would waive the death penalty; the court erred in hearing evidence of knife wounds on the body of the deceased when there was no evidence that defendant had inflicted them and in hearing evidence as to other unrelated crimes by defendant; that the court erred in accepting pleas of guilty from defendant as to other crimes before passing sentence in the murder case; that defendant's sentence was disproportionate to the other defendants' and was unfair; and that the whole proceeding was disorderly, misguided by defense counsel and lacked the characteristics of a fair and orderly trial as guaranteed by the constitution.

It is well established that an accused who enters a plea of guilty to a criminal offense, hopeful of leniency, should not be permitted to withdraw that plea merely because he is dissatisfied with the sentence imposed. (*People* v. *Morreale,* 412 Ill. 528; *People* v. *Hancasky,* 410 Ill. 148.) After a plea of guilty a prisoner stands before the court as a convicted criminal, and the presumptions of innocence which the law indulges on a not-guilty plea no longer exist. He may be hoping for leniency but he is entitled only to justice. (*People* v. *Riley,* 376 Ill. 364.) But, where one is sentenced on a plea of guilty the withdrawal of such plea after sentence is a matter discretionary with the trial court, a discretion which should be exercised liberally, especially in capital cases, in favor of life and liberty. The law favors a trial on the merits and all doubt should be resolved in favor of such a trial. (*People* v. *Schraeberg,* 340 Ill. 620; C.J.S., vol. 22, p. 641.) We have held that a defendant should be permitted to withdraw his plea when the record shows it was entered through misapprehension of the facts or the law, where the defendant has any defense worthy of consideration by the jury, or in any case where it appears that the ends of justice will be best served by submitting the case to the jury. (*People* v. *Throop,* 359 Ill. 354.)

The fact that defendant may be found guilty at the trial is not sufficient reason to deny him the opportunity to present such defense as he may have. (*People* v. *Carzoli*, 340 Ill. 587; *People* v. *Kurant*, 331 Ill. 470.) The statutes of this State provide that the crime of murder may be punishable by death, life sentence or a sentence to any number of years. If accused has any defense to the charge he should have the right to present that defense for consideration of the jury in fixing his punishment. (*People* v. *Jameson*, 387 Ill. 367.) Where the death sentence is imposed upon a plea of guilty, justice, which embodies all humane considerations, demands that the record be clear of any taint of misunderstanding, lack of knowledge, misleading information or advice, improper inducement or misleading conduct by the prosecuting attorney, anyone in authority over the prisoner, or anyone considered an officer of, or in any manner connected with, the court which imposes that sentence. If any doubt exists that the prisoner's plea is completely free from such influences justice demands that such doubt be removed. *People* v. *Trobiani*, 412 Ill. 235.

A serious doubt that defendant's plea was completely free from such influences exists in this case. Immediately upon pronouncement of the sentence by the trial judge defense counsel moved to vacate the judgment and sentence on the ground that he had been misled by the assistant State's Attorney into believing that the death penalty would not be imposed, and, relying on this belief, had advised his client to plead guilty to the crime of murder, an act which resulted in the forfeiture of his life. At the hearing on this motion defense counsel stated to the court that at least a week before the trial the assistant State's Attorney who prosecuted the case "solicited me . . . and promised me if I would plead these defendants guilty he would waive the chair and recommend leniency, and based upon that statement, that statement alone, Howard R. Williams, attor-

ney for the defendants Arthur Murphy and Percy King, pleaded guilty." Defense then called the assistant State's Attorney to the stand. The substance of his testimony was a denial of any promise of leniency made to defense counsel, but the witness did admit that he did have a conversation with defense counsel about the defendants pleading guilty and admitted that he had advised defense counsel that in his opinion that was counsel's only chance to evade the death penalty. Williams, counsel for King and Murphy, upon direct examination by Huff, attorney for defendant Hester, then testified that he had talked with Huff, advised him that he was pleading King and Murphy guilty on the State's Attorney's promise of leniency and that he (Williams) advised both Huff and his client Hester to plead guilty, assuring them that they would get the same leniency from the State's Attorney. He further testified upon cross-examination by the State's Attorney that he told Huff that if Hester stood trial King and Murphy would take the stand and testify against him. These conversations between Williams and Huff and Williams and Hester are not denied.

Without determining whether Williams' belief was justified, his conduct, both before and at the trial, characterized by his eagerness to throw his clients' fate upon the mercy of the court and his attempt to induce Hester to plead guilty, unmistakably demonstrates the sincerity of his belief and his conviction that his clients would thereby avoid the death penalty. The admission of the assistant State's Attorney that he did talk with defense counsel in the corridor of the courthouse about the pleas and the penalty, the contradictory evidence as to what this conversation was, counsel's eagerness to plead his clients guilty, his entreaties to defendant Hester and his counsel, and, significantly, the failure of the State's Attorney to make any recommendation to the court, form a set of circumstances which this court cannot say is clearly free from doubt that plaintiff

in error's plea was a result of his being misled by his counsel, who in turn was either misled by the assistant State's Attorney or by his own stupidity or incompetence.

At the hearing in aggravation and mitigation defendant King testified that as he ran from the building he tripped and the gun was accidentally discharged. The existence and location of the obstruction which defendant stated had tripped him was clearly brought out by the assistant State's Attorney's cross-examination. There is nothing in the record to contradict this version of the killing. While this explanation of the killing may not be a defense to the murder charge, it is an explanation of the killing which a jury might consider eliminated the heinous character of the killing and the abandonment of heart necessary to justify the imposition of the extreme penalty.

We believe that the circumstances place this case in that category of cases where justice may best be served by removing all doubt as to the propriety of the sentence and that the judgment and sentence should be vacated and a new trial granted.

The only errors assigned in regard to the armed robbery convictions, consolidated herewith, are that such sentences, with a minimum term of 199 years, a period of time greater than the ordinary span of life, and a maximum term of life are, in effect, "life to life" sentences, violative of the provisions and the intent and purpose of the indeterminate sentence statutes, (Ill. Rev. Stat. 1951, chap. 38, pars. 501, 802,) and condemned by this court in *People* v. *Westbrook,* 411 Ill. 301.

This argument invites us to speculate upon the life expectancy of those convicted of crime in determining the propriety of the sentences which have been imposed upon them. That we decline to do. In the case of any prisoner sentenced to the penitentiary there is always the possibility that incarceration will continue until his death. That likelihood may be great in one case and small in another.

In any case, the possibility may be enhanced or diminished by factors relating to the age and the health of the prisoner. We do not doubt that the consideration of factors relating to life expectancy would show that many sentences imposed for specified terms of years would actually result in incarceration for the balance of the prisoner's life. That possibility has not heretofore been thought to convert an authorized sentence for a term of years into an unauthorized sentence for life. Upon their face, the sentences here imposed comply with the statute which authorizes the imposition of a minimum sentence of "any term of years not less than one year" and a maximum sentence of life imprisonment, and we see no reason to measure the term of years imposed against the life expectancy of the prisoner.

The judgment of the criminal court of Cook County in cause number 32754 is reversed and the cause is remanded for a new trial.

The judgments of the same court in causes numbered 32868 and 32869 are affirmed.

*No. 32754 reversed and remanded;*
*Nos. 32868 and 32869 affirmed.*

Mr. JUSTICE MAXWELL, specially concurring:

I concur in this opinion as to cause numbered 32754, and concur in the result reached in causes numbered 32868 and 32869 but cannot agree with the reason, or lack of reason, assigned for affirming the sentences in the two latter cases.

In *People* v. *Westbrook*, 411 Ill. 301, this court held a "life to life" sentence invalid because "the legislature intended by sections 1 and 2 of the Sentence and Parole Act to require that definite sentences be imposed for the four crimes specifically mentioned in section 1, and that indeterminate sentences be imposed for all other crimes. [Citation] That intention would be nullified by the construction advanced by the People, which would convert the sharply

drawn legislative distinction between definite and indeterminate sentences into an empty formula of words." The effect of this ruling is to make an indeterminate sentence in such cases mandatory, a sentence which is not indeterminate void, and creates in the prisoner a legal right to an indeterminate sentence which the courts will enforce.

If a prisoner has a legal right to an indeterminate sentence I cannot agree with the court's affirming the sentences in the instant case. The prisoner's contention that a sentence of 199 years to life is equivalent to a life to life sentence is, to me, irrefutable. If "life to life" is void because not indeterminate, 199 years to life is void for the same reason. I can see neither justice nor reason in enforcing a legal right to an indeterminate sentence in one case and denying it in the other. In my opinion if the *Westbrook case* is the law of this State, King is denied equal protection of the law. In the *Westbrook case* the life to life sentence was void because it nullified the intention of the legislature to require indeterminate sentences. Can that intention be more effectively nullified than is done here by the court just refusing to consider whether the sentences are or are not indeterminate?

The law in this State now is, as pronounced in the *Westbrook* and *King cases,* that a sentence of life to life, although it is within the literal wording of the statute, is void because it is not indeterminate; but a sentence of 199 years to life is valid because it is within the literal wording of the statute, and being within the wording of the statute, the court will not consider whether it is indeterminate or not. This creates an enigma which I cannot understand.

I would affirm the sentences of 199 years to life in the instant case for the simple reason that, as so frequently stated by this court, a sentence under the Parole Act is a valid legal sentence for the maximum term, and so long as that maximum is within the limits fixed by law there is

nothing about which the prisoner can complain. The Parole Act, prior to the *Westbrook case,* was always considered as an act of comity and grace, extended by the State at its discretion to promote good prison government and discipline, and not as an act which created a legal right in a prisoner to a sentence which would guarantee him an opportunity for parole.

The legal sentence for armed robbery is contained in and is a part of the section of the Criminal Code which defines the crime. (Ill. Rev. Stat. 1953, chap. 38, par. 501; Jones Ann. Stat. 37.459.) The legislature there fixed the penalty at imprisonment in the penitentiary "for any term of years not less than one year or for life." This legal sentence, regardless of the Parole Act, automatically attaches to every judgment of guilty of the offense and is read into every sentence which may be pronounced by the court. (*People ex rel. Ewald* v. *Montgomery,* 377 Ill. 241; *People* v. *Brown,* 389 Ill. 202.) This court has always held that every sentence under the Parole Act is a valid legal sentence for the maximum term fixed by law for the offense involved (*People* v. *Webster,* 362 Ill. 226; *People* v. *Connors,* 291 Ill. 614,) and consequently every sentence for armed robbery is a valid sentence for life or, since the 1943 amendment of the Parole Act, for the maximum fixed by the court within the legal limit, *if the court elects to fix such maximum.* (*People* v. *Brown,* 389 Ill. 202.) Any provisions of the Parole Act for termination of this sentence prior to service of the maximum term are concessions of comity and grace, granted at the discretion of the executive under authority conferred by the legislature, for the purpose of attaining good prison government and discipline. These clemency provisions of the Parole Act being discretionary, a prisoner has no legal right to such benefits which the courts will enforce. (*People* v. *Thompson,* 381 Ill. 71.) Once sentence has been pronounced, so far as the courts are concerned, the prisoner has no legal right to enforce

until he has served the maximum sentence. (*People* v. *Connors*, 291 Ill. 614; *Uryga* v. *Ragen*, 181 Fed. 2d 660.) The only right which is vested in a prisoner by the Parole Act is that right which is vested in every person in all our statutes, civil or criminal, that the benefits of a statute shall not be denied any person by the arbitrary action of an administrative official. *People ex rel. Day* v. *Lewis*, 376 Ill. 509.

In *People* v. *Brown*, 389 Ill. 202, the prisoner, upon conviction of burglary and larceny, was sentenced for a term of one year to life, the penalty fixed by the Criminal Code. The prisoner contended the court had no jurisdiction to impose such sentence as the Parole Act required the court to fix a minimum and maximum sentence. This court rejected that contention, holding that the Parole Act did not require the fixing of a minimum and maximum different from the penalty fixed by law, "though it may do so within the limitations provided in the act." In *People* v. *Burnett*, 394 Ill. 420, the 1943 amendment was attacked in that it amended the penalties fixed by law. We there stated that the court, in exercising its discretion in fixing the minimum and maximum time to be served, was engaged in a judicial act determining the appropriate measure of punishment, and that the law authorizing this pertained to the "manner of sentencing" and was not intended to amend the penalty which the legislature had prescribed.

It appears therefore that the only change in the act made by the 1943 amendment is to give the courts the discretionary authority to fix a minimum and maximum time of service, within the statutory limitations, which is binding upon the executive authorities in granting parole. The legal sentence is still a valid sentence for the maximum provided by law or, if the trial court exercises its discretion, for the maximum fixed by the court. The fixing of any minimum sentence, so long as it is within the limitations fixed by law, does not change or alter the prisoner's legal

sentence in any manner but merely fixes the minimum time of service before the prisoner can be eligible for parole. This is not a part of his legal sentence, he has no legal right in the fixing of such minimum, and consequently cannot complain of the court's failure to fix a minimum or the court fixing any minimum within the statutory limitations.

The language of our statute is simple and clear. When this is true there is no need to go beyond the literal wording of the statute or to read into it something that is not there. The only limitation upon the fixing of a minimum sentence is that it shall not be less than the minimum fixed by law. Why should we read into this simple and clear provision the further requirement that such minimum shall be fixed at less than the maximum when the legislature did not so provide?

The only excuse for doing so is the unfortunate use of the term 'indeterminate' in the statute and applying that term to the sentence rather than to the period of incarceration to which it actually applies. I do not believe the legislature intended by the use of that term to require all sentences under section 2 to be such that the prisoner is guaranteed or has a legal right to a sentence which will actually be indeterminate. To fix a minimum term which will actually be indeterminate is a practical impossibility. Any minimum may exceed the life of the prisoner. Or to fix the minimum at a term which would ordinarily be less than the life of the prisoner would involve the courts in a morass of speculative evidence as to each prisoner's life expectancy and result in the fixing of a minimum penalty determined by the prisoner's ability to pay. Such criteria would be wholly foreign and repugnant to our constitutional guarantees and sense of justice.

Obviously, the fixing of any minimum cannot create an indeterminate sentence. On the other hand our Parole Act as it is applied vests power in the executive authorities to make every sentence indeterminate.

In my opinion the sentences in the *Westbrook case* and in the instant case are valid legal sentences for life imprisonment for the crime of armed robbery. Neither prisoner had a legal right to complain in regard to the fixing of the minimum in such sentences where there was no allegation that he had been arbitrarily denied the discretionary benefits of the Parole Act, and consequently neither had a cause of action.

The writs of error in both cases should have been dismissed.