THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LAURA CARLSON, Defendant-Appellant.

Third District   No. 3—88—0364

Opinion filed February 24, 1989.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for
appellant.

Edward F. Masters, State's Attorney, of Joliet (Judith Z. Kelly, of
State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Laura Carlson, was charged in Will County with

one count of murder for the death by asphyxiation of her four-month-old daughter, and one count of attempted murder for the attempted suffocation of her 1½-year-old son. The defendant withdrew her pleas of not guilty and entered pleas of guilty but mentally ill. A negotiated sentence was agreed upon, and on December 12, 1986, the defendant was sentenced to concurrent prison terms of 20 years and 6 years. Thereafter, the defendant filed a timely motion to vacate her guilty pleas which was denied by the trial court after a full evidentiary hearing. On appeal the defendant contends that the trial court abused its discretion in denying the motion to vacate since she had a defense worthy of consideration and because she may have misapprehended the law concerning insanity. We affirm.

On the evening of July 7, 1986, the Cresthill City police were dispatched to the defendant's apartment. Upon initial questioning, the defendant told the police that an intruder had entered the third-floor apartment through the bedroom window and had harmed the children while she was in the shower. After noticing that there was no balcony underneath the third-story window, the police requestioned the defendant. This time, the defendant admitted that she killed her daughter, Amanda, and attempted to kill her son, Antonio.

The defendant told Investigator Timothy Simenson that because of the many problems that she had to face in her life, the defendant felt that her children would be better off dead. The defendant stated that she went into the bedroom, kissed each child, and then held a pillow over the head of each of her children until she thought that each child was dead. When she had finished, the defendant opened the bedroom window and pushed out the screen on the window. The defendant stated that the damage to the screen would indicate that someone had made a forced entry into the apartment. Shortly thereafter, the defendant realized that Antonio was not dead. The defendant told Investigator Simenson that she could not bring herself to suffocate the child again, so she went across the hall to the neighbor's apartment for help. When questioned why she had fabricated her initial story, the defendant said that she was afraid of going to jail.

Two psychiatrists were appointed to examine the defendant. Dr. Kruglik found her to be fit to stand trial and sane at the time of the alleged offenses. Dr. Guschwan found that while the defendant was fit to stand trial, if he were called to testify he would find her insane at the time of the alleged offenses.

During the hearing at which the defendant entered her pleas of guilty but mentally ill, the trial judge thoroughly admonished the defendant pursuant to Supreme Court Rule 402 (107 Ill. 2d R. 402).

The defendant acknowledged that she had fully discussed the matter of entering the guilty pleas with her attorney, Barbara Badger (Badger). The defendant also said that she was completely satisfied with her attorney's representation. The trial judge, who knew of the defendant's hearing problem, specifically asked the defendant if she could hear him and if she had her hearing aid on. The defendant responded affirmatively to both questions. Further, the defendant stated, in response to the trial judge's inquiry, that the medication she was taking did not affect her ability to understand the trial judge's questions.

At the hearing on the defendant's motion to vacate, the defendant stated that she did not have her hearing aid on when she entered her pleas of guilty but mentally ill. Moreover, the defendant claimed that she did not recall the trial judge asking her about the hearing aid or about the medication. The defendant contended that she could not hear and did not understand the majority of the questions that the trial judge had asked her at the previous hearing. Most importantly, the defendant said that she did not, at the time she entered her pleas of guilty, understand that there was a possibility that she could be found not guilty by reason of insanity.

The State presented the testimony of two witnesses at the defendant's motion to vacate. Ina Lennon (Lennon), an investigator with the public defender's office, testified that she was present when Badger met with the defendant at the Will County jail and explained the defense of insanity to her. Lennon stated that Badger discussed the reports of both psychiatrists and specifically read the section of the criminal code dealing with defense of insanity to the defendant. Lennon further stated that Badger broke the statutory language down into laymen's terms and that the defendant indicated that she understood.

Badger then testified that she was appointed to represent the defendant and that she met with the defendant several times in the Will County jail. Badger specifically recalled a conference with the defendant at the jail in early November at which Lennon was also present. Badger stated that at this meeting she discussed the potential defense of insanity to the defendant. She claims that she read the statutory provisions on insanity to the defendant, and then broke each sentence down into laymen's terms to make sure the defendant understood her. She also apprised the defendant of the two psychiatrists' reports and their respective findings. Badger further told the defendant that if they went to trial, the State would present evidence that would make it difficult for her to prevail on an insanity defense. In

particular, Badger was concerned with the defendant's initial statements to the police in which she attempted to cover up her actions by claiming that an intruder had harmed her children. Badger advised the defendant that the jury, after hearing this evidence, could determine that the defendant had full knowledge of what had happened, thus negating the inability to distinguish right from wrong prong of the insanity defense.

Furthermore, Badger informed the defendant that if the defendant chose to present the defense of insanity, the State was prepared to have Assistant State's Attorney Kathleen Patton testify. Patton would testify that she had a conference with the defendant on an unrelated matter on the day of the incident. Patton would claim that she had no problem communicating with the defendant and that the defendant appeared lucid. Additionally, Patton would state that the defendant had indicated to her that she was going to do something to change her life.

Moreover, Badger stated that she discussed with the defendant the adverse impact of the defendant's admission that she had voluntarily taken cocaine on the date of the incident. Badger informed the defendant that this might damage her potential insanity defense. Badger explained that jurors would not likely feel sympathy for a mother who voluntarily ingested cocaine on the same day she killed one of her children and attempted to kill her other child.

Finally, Badger testified that she specifically discussed the following options with the defendant: proceed to trial with an insanity defense, seek a negotiated plea, enter a blind plea of guilty, or enter a blind plea of guilty but mentally ill. The defendant indicated to Badger that she understood each of her options and that she wanted to plead guilty but mentally ill.

Following this testimony and arguments of counsel, the trial judge found that defense counsel had fully apprised the defendant of the potential defense of insanity and that her guilty pleas were not involuntary. On appeal the defendant maintains that, because she had a defense worthy of consideration, she was thereby entitled to withdraw her guilty pleas. We do not agree.

■■ Illinois courts have long held that the trial judge's discretion in determining whether a guilty plea may be withdrawn will ordinarily not be disturbed unless it appears that the guilty plea was "entered through a misapprehension of the facts or the law, where the defendant has any defense worthy of consideration by the jury, or in any case where it appears that the ends of justice will be best served by submitting the case to a jury." (*People v. King* (1953), 1 Ill. 2d 496,

500.) The defendant attempts to argue that this language requires judges to vacate guilty pleas any time that a defendant asserts a defense that might be "worthy of consideration." Although no Illinois case has specifically interpreted what is meant by the general phrase "defense worthy of consideration," we find that the defendant's broad interpretation and application are supported neither by case law nor by public policy.

To support her position, the defendant relies heavily on the cases of *People v. King* (1953), 1 Ill. 2d 496, and *People v. Cosby* (1985), 137 Ill. App. 3d 854. These cases are readily distinguishable from the present case. In *King*, defense counsel was allegedly promised by the assistant State's Attorney that if he had the defendant plead guilty to murder and armed robbery, the death penalty would not be imposed. (*King*, 1 Ill. 2d at 501.) The defendant, relying on defense counsel's advice, subsequently pleaded guilty, and the defendant was sentenced to death. (*King*, 1 Ill. 2d at 499-500.) The court vacated the defendant's guilty plea, finding that the defendant had been misled. (*King*, 1 Ill. 2d at 503.) Similarly, in *Cosby*, the appellate court vacated the defendant's guilty plea where the defendant was apparently misled by his counsel. (*Cosby*, 137 Ill. App. 3d at 860.) The defendant was allegedly told by the public defender that a mistaken belief as to the age of the victim would not be a defense to the charge of aggravated criminal sexual assault. (*Cosby*, 137 Ill. App. 3d at 856.) The court found that since the statute specifically provided that a reasonable belief as to the alleged victim's being of age is an absolute defense to a charge of aggravated criminal sexual abuse, the defendant had a defense worthy of consideration. *Cosby*, 137 Ill. App. 3d at 860.

■ In the case at bar, the defendant was not misled or misinformed by her attorney. In fact, the record clearly supports the trial court's determination that Badger thoroughly explained the potential defense of insanity to the defendant. Unlike *King* and *Cosby*, the defendant fully understood the options available to her and voluntarily chose to plead guilty but mentally ill.

Additionally, this court notes that both of the defendants in *King* and *Cosby* were found to be under a misapprehension of either fact or law subsequent to entering their respective guilty pleas. The defendant in *King* was under the misapprehension of fact that the death sentence would not be imposed. (*King*, 1 Ill. 2d at 501.) The defendant in *Cosby* was under the misapprehension of law that his mistaken belief as to the victim's age was not a defense to the charge of aggravated criminal sexual assault. (*Cosby*, 137 Ill. App. 3d at 856.) Thus, the guilty pleas in both *King* and *Cosby* were not vacated merely on the

grounds that the defendant had a "defense worthy of consideration," but also because the defendants' guilty pleas were "entered through a misapprehension of the facts or the law."

This court has found no Illinois case that has vacated a defendant's guilty plea solely or merely on the basis that a defendant might have a defense worthy of consideration. Such a rule would totally undermine the finality of guilty pleas. As the sentence is, of necessity, only imposed after the guilty plea is entered, any defendant dissatisfied with the sentence would be in a position to ask that his plea be set aside for the reason that he had a defense worthy of consideration. Such a result would be unjust and unfair and would disrupt the orderly administration of the criminal courts. While having a defense worthy of consideration may be a significant element of a motion to withdraw a guilty plea, it is, standing alone, not a sufficient element.

■ Finally, the defendant attempts to argue that she entered a plea of guilty under a misapprehension of the law of insanity. By reason of the facts previously noted, the defendant's claim in this regard is also without merit.

For the reasons given, we affirm the decision of the trial court.

Affirmed.

BARRY and STOUDER, JJ., concur.