NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 170546-U

NO. 4-17-0546

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 12, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JOSIAH DANIEL PORTER, | ) | No. 15CF103 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert L. Freitag, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Holder White and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed, finding there was no ineffective assistance of counsel, the trial court did not err in denying defendant's motion to withdraw his guilty plea, and it did not err in sentencing defendant to seven years on each count of criminal sexual assault to be served consecutively.

¶ 2   On July 15, 2016, defendant pleaded guilty to two counts of criminal sexual assault. The trial court sentenced him to seven years in prison for each count to be served consecutively. Defendant filed a motion to reconsider the sentence, which was denied. Defendant then filed a motion to withdraw his guilty plea, which was denied.

¶ 3   On appeal, defendant argues the trial court erred in denying his motion to withdraw because his attorney was ineffective and he had "a defense worthy of consideration." Defendant alternatively argues the seven-year sentences for each count were excessive. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5          On February 4, 2015, a grand jury indicted defendant on two counts of criminal

sexual assault (counts I and II) (720 ILCS 5/11-1.20(a)(1) (West 2014), alleging he committed

"an act of sexual penetration between his penis and the vagina of P.H. by the use of or threat of

force, and committed an act of sexual penetration between his penis and the mouth of P.H. by the

use of or threat of force." The State alleged these offenses occurred on or about January 25,

2015.

¶ 6          On July 15, 2016, defendant agreed to enter a blind plea of guilty to counts I and

II. The trial court admonished defendant that both counts were non-probationable, informed him

of the minimum and maximum term of sentence for each count, and informed him of the

mandatory supervised release term of three years up to natural life. Additionally, the court told

defendant he would be required to serve 85% of the sentence imposed for each count, both

counts must be served consecutively, and defendant would be required to register as a sex

offender for the rest of his life. When asked if he understood each admonishment, defendant

answered in the affirmative. In response to whether defendant had any questions about the

admonishments or his trial rights, he said, "No." When asked if anybody forced, threatened, or

coerced defendant to make him plead guilty, defendant said, "No, your Honor." The court also

asked if anyone, including his lawyer, promised him anything about what was going to happen in

his case to try to get defendant to plead guilty. Defendant responded, "No, your Honor." The

State presented a factual basis as follows:

> "This defendant has two codefendants. The victim in this case,
>
> P.H., was with her friend, M.R. They went back to M.R's
>
> boyfriend's apartment. When they got back to the apartment, the

three suspects, this defendant and his two codefendants, began to follow P.H. around. P.H. told them to leave her alone, and they refused. The three suspects then took her into one of the suspect's bedrooms and took turns having vaginal intercourse with her while holding her down and not allowing her to get up. According to P.H., they also were forcing her to perform oral sex on the three of them. This defendant, Mr. Porter, was interviewed, and he admits that his penis might have touched her lips. He further indicated that he did, in fact, put his penis in the victim's vagina and later said that the victim, also, quote, "sucked his penis," unquote. Porter said that all of the suspects were standing around "her," the victim, P.H., taking turns having sex with her."

After the factual basis was recited, the trial court inquired of defendant as follows:

THE COURT: "Mr. Porter, now that you and I have gone over the charges in this case, we have gone over the penalties that could be imposed, we have talked about all those trial rights you have that you give up by pleading guilty, understanding all of that now, sir, how do you plead to these two charges of criminal sexual assault? Do you plead guilty or not guilty?

DEFENDANT: Guilty, your Honor."

The court found defendant's guilty plea to be knowing and voluntary.

¶ 7 At the sentencing hearing, the State corrected the presentence report to reflect defendant was sentenced to two years in the Illinois Department of Corrections earlier the same morning for manufacture/delivery of cannabis in case number 15-CF-184. The State also

presented aggravation in the form of two victim impact statements, one from the victim and the other from her mother. Reading from her statement at the sentencing hearing, the victim provided a detailed explanation of how the sexual assault impacted her life and told the court how the sexual assault continues to negatively affect her. The victim's mother also read her statement aloud and gave a detailed account of how the sexual assault affected her daughter, the family, and how her daughter's assault continues to have a lasting and detrimental impact on the family. Defendant presented a mitigation packet consisting of a number of letters from defendant, his parents, and others. Defendant also gave a statement in allocution. The State recommended a sentence of seven years on each count, while defendant's counsel argued for four years on each count.

¶ 8        The court indicated it considered the information in the presentence investigation report, all of the evidence presented at the hearing, the recommendations of counsel, defendant's statement in allocution, and all the relevant statutory factors in aggravation and mitigation in this case. The court also noted defendant's criminal record was not significant. The court identified defendant's recent cannabis felony, for which he was sentenced earlier that morning, as an aggravating factor appropriate for the court to consider, but commented it was not as significant as in some other cases. When considering the mitigation presented on behalf of defendant, the court considered defendant's willingness to plead guilty and accept responsibility, the relevant statutory factors in mitigation, and the mitigation packet submitted by defendant. The court stated the following during the sentencing hearing:

“Of all of the crimes that can be committed, in my view, this type

of crime, a sexual assault of any kind, is about the most selfish act

that any human being can make. Because you made a choice to do

something for yourself with a total disregard for how it was going to affect all the people in this room. This is tragic ***. Everyone has been affected by your choice that night. And in my view it was just an absolutely selfish and unjustifiable choice that you made that night. I think it's with that in mind that the court is going to impose a sentence in this case that reflects the seriousness of your crime, but also reflects the mitigation that's been presented here today. And the record is not going to show this, but after you finished your statement there was a bit of a pause. The court didn't immediately begin my comments. That's because as I told you at the beginning, I was considering very strongly what is appropriate here. And I will tell you that the court believes that this offense was of such a serious nature and had such a lasting impact that a sentence frankly even in excess of what's been recommended here would probably be appropriate in this case, and I think would be justified in this case, and would be upheld on appeal in this case. But because of the mitigation that's been presented I am going to essentially temper what I think would probably be the appropriate sentence. I'm going to sentence you in accordance with what the State has recommended. You will be sentenced on each count to a term of seven years in the Illinois Department of Corrections."

¶ 9 On May 31, 2017, the court heard evidence on defendant's motion to withdraw his guilty plea, which was filed on March 27, 2017. Defendant argued his attorney at the time of

his guilty plea was ineffective and he should be allowed to withdraw his guilty plea in light of the victim's subsequent testimony during the trial of one of the codefendants. Defendant argued the victim's testimony differed from statements provided in discovery and the State's factual basis recited during the plea, and, therefore, constituted new evidence. Defendant provided an affidavit from the attorney who represented him during the plea. The affidavit alleged a difference between the plea offer tendered on the day of the plea and the attorney's understanding of what the plea was supposed to be, based on previous conversations with the assistant state's attorney (ASA) handling the case. According to defendant's counsel, he informed defendant the plea was an open or "blind" plea to one count of criminal sexual assault, only to discover, when they arrived at the courthouse and began reviewing the paperwork for the plea, it was to be an open plea to both counts of criminal sexual assault. Further, the attorney's affidavit said while informing defendant of this new plea, the affiant failed to inform defendant that a guilty plea would result in a mandatory lifetime sex offender registration, and a mandatory supervised release period of three years to natural life. In his brief, defendant concedes the trial court provided him with proper admonishments pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012) before accepting the plea. However, defendant contends he would not have entered into a plea of guilty if his prior attorney accurately informed him of the correct plea deal further in advance. Defendant alleges that he traveled to a courtroom far from home under the mistaken belief he would be entering a blind plea to one count of criminal sexual abuse, only to be confronted with a plea agreement different from the one previously communicated to him by his attorney. Defendant contends one of the codefendants received, via a negotiated plea, a four-year sentence on a reduced charge, making defendant's sentence excessive in comparison. Defendant also argues, because one of the codefendants was found not guilty at a jury trial

subsequent to defendant's guilty plea, the testimony of the victim during that trial was new information, as it allegedly differed from the State's factual basis and previous statements provided to defendant in discovery.

¶ 10        The State argued the codefendant's trial focused on the guilt or innocence of the codefendant, not this defendant, and therefore the entire presentation of the case was different than it would have been for this defendant. Different questions would have been asked, and different evidence would have been presented, including the inculpatory admissions of the defendant and the deoxyribonucleic acid (DNA) evidence. The State argued the four-year sentence of the other codefendant involved a different victim, was factually dissimilar to the present case, and was irrelevant when considering sentencing factors for this defendant. The State also noted all the evidence admitted by the State during the trial of the codefendant was previously provided to this defendant in discovery, well before he entered his guilty plea. The only allegedly new evidence was the trial testimony of the victim. Additionally, the State presented evidence, by way of an affidavit from the ASA handling the case and an e-mail between the parties, indicating no offer was tendered to the defense which included a plea to one count of criminal sexual abuse at all, and the only offer conveyed had been for a plea to one count of criminal sexual assault for a specific term of six years in the Illinois Department of Corrections. The trial court took the defendant's motion to withdraw guilty plea under advisement until July 26, 2017.

¶ 11        On July 26, 2017, as part of its ruling on defendant's motion to withdraw his guilty plea, the trial court stated it reviewed all the exhibits, transcripts, and other evidence before rendering its decision. The court stated the record was clear defendant was informed by the court of the following: his plea included both counts of the offense, defendant acknowledged

he was entering into a plea for both counts, and he was properly admonished regarding the penalties, sex offender registration requirement, and mandatory supervised release period. Additionally, the court found it complied with Rule 402 (Ill. S. Ct. R. 315 (eff. July 1, 2012)), and any trial testimony of the victim regarding the codefendant was a subsequent matter that had no bearing on the State's factual basis recited during defendant's plea. The trial court denied defendant's motion to withdraw his guilty plea and then heard arguments on defendant's motion to reconsider the court's sentence.

¶ 12 After listening to arguments from both parties, the trial court said it read defendant's motion and viewed the exhibits. The court then proceeded to discuss each of the issues raised by defense counsel before denying defendant's motion for reconsideration. With regard to the disparity-of-sentencing argument, the court considered a sentence imposed on a codefendant pursuant to a plea and a codefendant's jury verdict to have little relevance to this defendant's sentence. The court reiterated that it considered all relevant factors in aggravation and mitigation, all relevant evidence presented at the time of sentencing, and defendant's pre-sentence investigation report before imposing a sentence.

¶ 13 This appeal followed.

¶ 14 II. ANALYSIS

¶ 15 A. Withdrawal of Guilty Plea

¶ 16 "A defendant has no absolute right to withdraw a plea of guilty." *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 32, 85 N.E.3d 568. Rather, in order to withdraw his plea, a defendant must establish a recognized basis for such withdrawal. *People v. Wilson*, 295 Ill. App. 3d 228, 236, 692 N.E.2d 422, 428 (1998). "The defendant bears the burden of showing the necessity for withdrawal." *People v. Edmonson*, 408 Ill. App. 3d 880, 884, 946 N.E.2d 997, 1001

(2011). Leave to withdraw a plea of guilty is not granted as of right but only as required to correct a manifest injustice under the facts of the particular case. *People v. Pullen*, 192 Ill. 2d 36, 39, 733 N.E.2d 1235, 1237 (2000). A trial court has discretion to permit a defendant to withdraw his guilty plea, and that decision will not be reversed on appeal absent an abuse of discretion. *Wilson*, 295 Ill. App. 3d at 234. The trial court's decision will not be disturbed on appeal unless " 'it appears that the plea of guilty was entered on a misapprehension of the facts or of the law *** or where the accused has a defense worthy of consideration by a jury, or where the ends of justice will be better served by submitting the case to a jury, the court should permit the withdrawal of the plea of guilty and allow the accused to plead not guilty.' " *People v. Davis*, 145 Ill. 2d 240, 244, 582 N.E.2d 714, 716 (1991) (quoting *People v. Morreale*, 412 Ill. 528 531-532, 107 N.E. 2d 721, 723 (1952)).

¶ 17                                    1. *Ineffective Assistance of Counsel*

¶ 18        Defendant argues this court should reverse the trial court's ruling and remand for further proceedings because defendant's counsel at the time of his guilty plea was ineffective. We disagree.

¶ 19        "The sixth amendment guarantees a criminal defendant the right to effective assistance of trial counsel at all critical stages of the criminal proceedings, including the entry of a guilty plea." *People v. Brown*, 2017 IL 121681, ¶ 25, 102 N.E.3d 205. A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Brown*, 2017 IL 121681, ¶ 25. The *Strickland* standard also applies to a claim that trial counsel was ineffective during the guilty-plea process. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant."

*v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219, 808 N.E.2d 939, 953 (2004) (citing *Strickland,* 466 U.S. at 687). An attorney's conduct is deficient if the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently. *People v. Rissley*, 206 Ill. 2d 403, 457, 795 N.E. 2d 174, 204 (2003). Prejudice is established when a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Evans*, 209 Ill. 2d at 219-20 (citing *Strickland*, 466 U.S. at 694). A defendant must satisfy both prongs, and the failure to satisfy either precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010).

¶ 20        In regard to the first *Strickland* prong, defendant argues his defense attorney was deficient for falsely leading him to believe the State would dismiss one count of criminal sexual assault if defendant entered an open guilty plea to the remaining count when no such plea agreement existed, appearing at the plea hearing based on this information, and, after disclosing the error to defendant, leading him to feel pressured to plead guilty at the impending hearing.

¶ 21        " 'Whether a plea of guilty is unintelligent and therefore vulnerable *** depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but whether that advice was within the range of competence demanded of attorneys in criminal cases.' " *People v. Correa*, 108 Ill. 2d 541, 549, 485 N.E.2d 307, 310 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). " 'Generally, for a plea to be deemed voluntary and intelligent, a defendant must be fully aware of the direct consequences of entering the plea.' [Citation.]" *People v. Presley*, 2012 IL App (2d) 100617,

¶ 27, 969 N.E.2d 952. If, in making the plea, the defendant reasonably relied on his attorney's incompetent advice or representations, "then it can be said that the defendant's pleas were not voluntary; that is, there was not a knowing and intelligent waiver of the fundamental rights which a plea of guilty entails." *Correa*, 108 Ill. 2d at 549. However, the voluntary nature of a plea is not destroyed simply because it was made in reliance on "some erroneous advice by counsel ***." *Beasley*, 2017 IL App (4th) 150291, ¶ 32. In some circumstances, comprehensive admonishments from the trial court may cure the effects of "erroneous advice of counsel" by ensuring pleas are not obtained by any threats, promises, or coercion. *People v. Hall*, 217 Ill. 2d 324, 338-39, 841 N.E.2d 913, 922 (2005). In order to successfully establish the deficient representation prong under *Strickland*, the defendant must show the attorney's conduct was objectively incompetent and the attorney's misconduct or misrepresentations were determinative and reasonably relied upon in making the plea such that the plea was not voluntarily or intelligently made. See *Correa*, 108 Ill. 2d at 549; *Morreale*, 412 Ill. at 533.

¶ 22          In *Hall*, the defendant alleged his defense attorney provided ineffective assistance by erroneously advising him he had no valid defense to the aggravated kidnapping charges against him despite his claim he was unaware a child was in the car at the time he stole it. *Hall*, 217 Ill. 2d at 328-29, 334. Since aggravated kidnapping requires the defendant's conduct to be willful, the court found the advice of defendant's counsel was clearly erroneous and objectively unreasonable. *Hall*, 217 Ill. 2d at 335. Since the sole basis for the defendant's plea was his attorney's erroneous advice, the attorney's misinformation prevented the defendant's guilty plea from being entered voluntarily and intelligently, and the court found the defendant satisfied the first prong of *Strickland*. *Hall*, 217 Ill. 2d at 341.

¶ 23       In the case before us, defendant's attorney provided an affidavit confirming a miscommunication occurred regarding the exact terms of the plea before it was entered. The affidavit states the attorney believed there was a plea offer for one count of criminal sexual assault, which he communicated to defendant. Further, defendant's attorney claimed he did not realize the plea was to both counts until he arrived at the courthouse the morning of the plea hearing and began going over the paperwork with his client. He informed defendant about the miscommunication and the prosecutor's actual offer and indicated he had a further conversation with the ASA. According to the State's affidavit, attached to its response to defendant's motion to withdraw his guilty plea, this conversation took place in the presence of both defendant and his parents, a fact which is acknowledged in defendant's motion to withdraw his plea. During that conversation, the affiant ASA was asked by defendant directly whether he could plead to one count of criminal sexual assault and was told no. Furthermore, while the motion to withdraw his plea repeatedly refers to a conversation between defendant and his attorney regarding a plea to criminal sexual abuse, the affidavit from defendant's previous attorney does not mention he informed defendant the plea was to one count of criminal sexual abuse. The attorney's affidavit says he "never informed the [d]efendant that he would have to register as a sex offender for the rest of his life upon a plea or finding of guilt to Criminal Sexual Abuse." However, this appears to be inadvertent as the first page of the affidavit states he told defendant "that his offer was to plead guilty to one count of Criminal Sexual Assault." The State does not dispute defendant's attorney incorrectly advised him about the nature of the guilty plea. However, the State argues defendant still voluntarily, without coercion, entered the guilty plea and knowingly decided to "throw himself on the mercy of the court in a hope for milder punishment." *Morreale*, 412 Ill. at 533. Defendant counters, contending the plea was not voluntary or intelligent because it was

- 12 -

made under the pressure of the impending guilty plea with hastily-given advice. However, *Morreale* is distinguishable from the present case.

¶ 24 In *Morreale*, the defendant sought to withdraw his guilty plea, asserting "he had changed his plea only because [his attorney] and [his attorney's associate] had advised him that it would be the best course to follow and that he would get probation." *Morreale*, 412 Ill. at 531. The record showed on the day of the defendant's scheduled trial the prosecutor urged an associate of defendant's counsel, who was only appearing to obtain a continuance, to get the defendant to change his plea. The associate advised the defendant to change his plea, the defendant expressed reluctance about changing his plea, and during hurried discussions with his attorney, who was in trial in another courtroom, defendant's attorney also told the defendant not to " 'worry about anything; plead guilty and you will get probation.' " *Morreale*, 412 Ill. at 530. Although the trial court fully and properly admonished the defendant concerning the potential consequences of his guilty plea and the prosecution did not oppose probation, the trial court later denied probation and imposed a sentence of 5 to 10 years' incarceration. *Morreale*, 412 Ill. at 529-31. Under these circumstances, our supreme court found the hurried consultation with defendant, his counsel who was actually in trial elsewhere, and a "youthful associate" "engendere[d] confusion and misapprehension in [the defendant]." *Morreale*, 412 Ill. at 533. Further, the pressuring of the associate by the prosecutor effectively denied defendant the right to be represented by counsel of his own choosing, and the "haste and manner in which the guilty plea arrangements were made" further contributed to the confusion and apprehension. *Morreale*, 412 Ill. at 533. Our supreme court also found the State's lack of opposition to a probationary sentence was significant because the defendant would not have realized the prosecutor's representations were not binding on the trial court. *Morreale*, 412 Ill. at 533. As a result, the trial

- 13 -

court's admonishments were found insufficient to overcome counsel's erroneous advice. *Morreale*, 412 Ill. at 533-34. Thus, the court found the defendant's plea was not knowingly made and determined the interests of justice supported allowing the defendant to withdraw his plea. *Morreale*, 412 Ill. at 533-34.

¶ 25        Here, like the defendant in *Morreale*, defendant undoubtedly was surprised and initially confused to learn the plea offer was not what he expected. It is equally true this all needed to be addressed before the plea could proceed. However, this is where the similarities end.

¶ 26        Unlike the defendant in *Morreale*, the manner in which the plea was reached did not involve a hurried back-and-forth with defendant, the prosecutor, and some unsuspecting associate of defendant's attorney on the day the matter was scheduled for trial. Neither the affidavit of defendant's counsel, nor that of the prosecutor reflect hurried or pressured plea discussions. The affidavits of defendant's parents also make no reference to hurried or pressured discussions other than a purported statement by the prosecutor. Notably absent from the affidavits of defendant's counsel and the ASA is any statement by the ASA where she purportedly said she would "not drag the victim back and forth" to court and defendant's options were to plead to both counts or proceed to trial. Even that alleged statement does not indicate a decision was required to be immediately forthcoming. It must be remembered, this matter was not set for trial, nor does the record before us indicate it was in a posture for trial. Further, the plea hearing had been scheduled by defendant's counsel—not the State or the trial court. Under these circumstances, had the plea not proceeded, it is most likely the matter would have been continued for a trial date. What occurred was a discussion between defendant's attorney, defendant, his parents, and the prosecutor clarifying the terms of the State's offer and

defendant's options. Defendant does not allege the prosecutor pressured defendant to plead guilty, nor do any of the affidavits submitted by the defense explain the time frame during which these discussions took place or contend there was inadequate time to discuss what transpired. Defendant's options once he was informed of the actual terms of the plea offer essentially remained the same: he could still proceed to trial, as defendant's counsel previously indicated they were prepared to do; he could request a continuance, either seeking more time to consider the plea or for further negotiations; or he could proceed to plead pursuant to the offer as tendered. Unlike the defendant in *Morreale*, once the State's position was clear, defendant had the opportunity to discuss the matter with his attorney and his parents. Notably, unlike *Morreale*, defendant does not allege his attorney promised what sentence he would receive or that he experienced any actual pressure exerted by his attorney to plead guilty. He also does not say his attorney or the prosecutor guaranteed a reduced sentence in exchange for pleading guilty. Instead, the record reveals defendant even entered into the negotiations himself, asking the prosecutor whether she would consider a plea to one count of criminal sexual assault, which she declined. He then informed the prosecutor he was going to plead guilty, and "he hoped the Court saw that he was taking responsibility." It is obvious, by that point, defendant made his choice and hoped by doing so he might receive a more favorable sentence. This is not the confused, pressured, and uninformed defendant in *Morreale*.

¶ 27    It is also not unreasonable to conclude the thorough admonishments given to defendant and the inquiry of defendant by the trial court dispelled any error in the attorney's initial misunderstanding of the plea or the manner in which the plea agreement was reached, thereby ensuring the plea was voluntarily and intelligently made. There is no dispute, and the record is clear, the trial court advised defendant, and reiterated several times, he was pleading to

- 15 -

two counts of criminal sexual assault. In fact, the court asked defendant directly whether he understood it was a plea to two counts, and, after reading count I, asked: "Is that one of the charges you are pleading guilty to today?" To which defendant responded, "Yes, your Honor." After reading the second count, the court again inquired: "And is that the second charge you are pleading guilty to today?" To which defendant again responded: "Yes." Defendant makes no claim the trial court's admonishments, given pursuant to Rule 402 (Ill. S. Ct. R. 402 (eff. July1, 2012)) before his plea, were in any way misleading or incomplete. After providing defendant with the proper admonishments, defendant said he understood the charges, the penalties, and his rights, and he had no questions. He further acknowledged no one, including his attorney, had forced, threatened, coerced, or "promised [him] anything about what's going to happen in [his] case to try to get [him] to plead guilty here today[.]" The factual basis was read in court, and defendant reiterated he was pleading guilty to both counts. In addition, defendant signed the plea agreement, which detailed an open plea to both counts and outlined how both counts were non-probationable, mandatorily consecutive, and contained a mandatory supervised release date of three years to life.

¶ 28     Defendant, however, maintains "accurate and complete admonishments do not purge the taint of ineffective assistance of counsel" and the issue for this court is whether the admonitions were sufficient to alleviate the prejudice from counsel's deficient representation. This presupposes counsel's representation was deficient and misstates the issue, which is whether his attorney's misrepresentations were the determinative factor causing him to plead guilty. The record shows they were not. It is plausible the miscommunication regarding the terms of the plea got defendant to the courthouse and through the door, but it did not get him to plead guilty. By the time defendant pleaded guilty, he knew the offer, as his attorney initially

understood it, never existed. He could have continued the matter for trial, asked for a continuance to consider the offer, continued negotiations, or set the matter for a plea on another date and time. Defendant also knew pleading guilty did not necessarily guarantee him a favorable sentence. While defendant says he felt pressured by some time constraints, neither his attorney nor the prosecutor pressured him into entering the plea. In fact, he told the prosecutor, after she rejected his proposal, he was pleading guilty and hoped the trial court saw he was taking responsibility. Although evidence in the record reflects alleged miscommunication regarding the terms of the plea before the trial court's Rule 402 admonishments, any miscommunication was cured both before and during defendant's plea of guilty. The plea may not have been what defendant wanted, but there is nothing in the record to indicate it was not what he accepted after discussion with counsel, his parents, and even the prosecutor. Defendant's attorney may have been mistaken, but mistaken is not necessarily deficient. Any mistake was corrected and cured by the admonishments and comments of the court, as reflected in defendant's plea. Accordingly, we find the court did not abuse its discretion in denying defendant's motion to withdraw his plea based on ineffective assistance of counsel.

¶ 29    A defendant must satisfy both prongs of the *Strickland* analysis, and the failure to satisfy either precludes a finding of ineffective assistance of counsel. *Clendenin*, 238 Ill. 2d at 317-18. The failure of a defendant to establish either prong under an ineffective assistance of counsel analysis is fatal to the claim. *Strickland*, 466 U.S. at 697. Because we find defendant failed to establish the deficiency prong as required under *Strickland*, we do not need to analyze whether defendant established prejudice.

¶ 30                    2. *Defense Worthy of Consideration*

¶ 31       Defendant argues this court should reverse the trial court's ruling and remand for further proceedings because he had a defense worthy of consideration at trial, namely, consent. Specifically, defendant maintains the testimony of the victim during a subsequent trial for a codefendant, though not recanted, was inconsistent with the factual basis provided by the State and other previous statements made by the victim. We disagree.

¶ 32       As noted above, " 'where the accused has a defense worthy of consideration by a jury, *** the court should permit the withdrawal of the plea of guilty and allow the accused to plead not guilty.' " *Davis*, 145 Ill. 2d at 244 (quoting *Morreale*, 412 Ill. at 531-32). "[N]o Illinois case has specifically interpreted what is meant by the general phrase 'defense worthy of consideration***.' " *People v. Carlson*, 179 Ill. App. 3d 1050, 1054, 535 N.E.2d 79, 81 (1989). Establishing a worthy defense does not require the defendant to "prov[e] actual innocence." *People v. Feldman*, 409 Ill. App. 3d 1124, 1129, 948 N.E.2d 1094, 1100 (2011). Doubt of guilt or actual innocence is a separate and distinct basis for allowing withdrawal of a guilty plea. See *Morreale*, 412 Ill. at 531-32. Further, "[w]hile having a defense worthy of consideration may be a significant element of a motion to withdraw a guilty plea, it is, standing alone, not a sufficient element." *Carlson*, 179 Ill. App. 3d at 1055. A rule providing otherwise "would totally undermine the finality of guilty pleas" and " any defendant dissatisfied with the sentence would be in a position to ask that his plea be set aside for the reason that he had a defense worthy of consideration." *Carlson*, 179 Ill. App. 3d at 1055. The defendant bears the burden of demonstrating sufficient grounds to allow withdrawal of a plea. *People v. Kokoraleis*, 193 Ill. App. 3d 684, 691-92, 549 N.E.2d 1354, 1360 (1990).

¶ 33       In *Carlson*, the defendant argued she had a defense worthy of consideration because the insanity defense had been available to her. *Carlson*, 179 Ill. App. 3d at 1053.

- 18 -

However, the record established, prior to pleading guilty, the defendant's attorney advised her of the availability of the insanity defense and the likelihood of the success of the defense based on the evidence against her and a jury's likely perception of that evidence. *Carlson*, 179 Ill. App. 3d at 1053. As a result, "the defendant fully understood the options available to her and voluntarily chose to plead guilty ***." *Carlson*, 179 Ill. App. 3d at 1054. Accordingly, since the defendant had known about the defense and voluntarily chose to plead guilty anyway, the court found the defendant was not entitled to withdraw her plea. *Carlson*, 179 Ill. App. 3d at 1054.

¶ 34　　　　In *People v. Dougherty*, 394 Ill. App. 3d 134, 915 N.E.2d 442 (2009), the defendant sought to withdraw his guilty plea to a misdemeanor domestic battery against his girlfriend. His claimed basis for withdrawing his plea is similar to that asserted by defendant here. The defendant in *Dougherty* claimed both he and defense counsel believed the State did not have a strong case against him, the victim's story was false, that someone else committed the crime, and other witnesses were now available to testify. *Dougherty*, 394 Ill. App. 3d at 140. The appellate court noted most, if not all of the evidence listed in his motion, was available to him at the time of his plea. *Dougherty*, 394 Ill. App. 3d at 140. The same is true here. The defendant in *Dougherty* also failed to present any other witnesses or affidavits to indicate there was favorable testimony supporting a reasonable doubt as to his guilt. *Dougherty*, 394 Ill. App. 3d at 140. Here, defendant relies solely on the victim's testimony in a separate trial involving a different defendant. He contends there were inconsistencies in the victim's testimony compared with the factual basis provided by the State and her previous statements to police. The court in *Dougherty* also noted the defendant entered a written plea agreement in the case and the defendant "failed to present any objective evidence that he has a meritorious defense or that the ends of justice require a trial." *Dougherty*, 394 Ill. App. 3d at 140. Here, defendant also entered into a written

- 19 -

plea agreement, and the alleged inconsistencies of the victim's testimony are the only other evidence offered.

¶ 35      Defendant states he has a consent defense worthy of consideration based on testimony the victim gave at a later trial of one of his codefendants. He does not allege he was unaware consent was available as a defense in his case, nor does he say his attorney failed to advise him of the possible consequences surrounding the use of such a defense. Similar to *Dougherty* and *Carlson*, defendant had a potential defense available to him before entering into a written plea agreement with the State. This suggests defendant knew his options and was not misled about the law regarding a potential defense but chose to proceed with a guilty plea. To then allow defendant to withdraw his plea for a defense he declined to take advantage of could reasonably be viewed as unjustly undermining the finality of the guilty plea.

¶ 36      Both parties agree the defendant was properly admonished by the trial court pursuant to Rule 402 (Ill. S. Ct. R. 402 (eff. July 1, 2012)) before entering into his guilty plea. After admonishing defendant, the court found defendant's guilty plea to be knowing and voluntary. Guilty pleas that are knowing and voluntary are judicial admissions. See *People v. Peterson,* 74 Ill. 2d 478, 488, 384 N.E.2d 348, 353 (1978) ("[T]he admissibility of a confession is not governed by the rules applicable to judicial admissions of guilt, such as pleas of guilty[.]"); see also *Feldman*, 409 Ill. App. 3d at 1128 (holding that the defendant was not allowed to withdraw his guilty plea to possession of a controlled substance when he had a valid prescription at the time of the plea, the plea was a judicial admission which operated as a waiver of proof of a factual issue, and defendant was estopped from contesting those facts). "A judicial admission is a deliberate, clear, unequivocal statement of a party, about a concrete fact, within the party's particular knowledge." *Eidson v. Audrey's C.T.L., Inc.*, 251 Ill. App. 3d 193, 195, 621 N.E.2d

921, 923 (1993). A judicial admission is binding upon the party making it and may not be controverted by other evidence. *Feldman*, 409 Ill. App. 3d at 1128. A plea of guilty constitutes an admission of every fact alleged in an indictment as long as each fact admitted is an ingredient of the offense charged. *People v. Henderson*, 95 Ill. App. 3d 291, 296, 419 N.E.2d 1262, 1265 (1981). "A defendant may, by plea of guilty or confession, waive the production of all evidence of his guilt." *People v. Green*, 17 Ill. 2d 35, 42, 160 N.E.2d 814, 818 (1959).

¶ 37            In the matter before us, defendant entered into a binding judicial admission, thereby admitting every fact alleged in both indictments which may not be controverted by other evidence. At the time of his plea, defendant was aware of his right to demand a trial to test the State's evidence and attack the credibility of witnesses during that trial. The record shows he had no misapprehensions about the law or facts regarding a defense of consent. Instead, he was willing to plead guilty, enter into a binding judicial admission of guilt, and leave the potential evidence unchallenged and the credibility of State witnesses intact. Therefore, the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.

¶ 38                              B. Excessive Sentence

¶ 39            Defendant next argues that the trial court abused its discretion by sentencing him to seven years for each count of criminal sexual assault to be served consecutively. We disagree.

¶ 40            The Illinois Constitution mandates "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. " 'In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed.' " *People v. Hestand*, 362 Ill. App. 3d 272, 281, 838 N.E.2d 318, 326 (2005) (quoting

*People v. Hernandez*, 319 Ill. App. 3d 520, 529, 745 N.E.2d 673, 681 (2001)). However, "the seriousness of an offense is considered the most important factor in determining a sentence." *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53, 23 N.E.3d 430.

¶ 41　　　　　With excessive-sentence claims, this court has explained appellate review of a defendant's sentence as follows:

>"A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] Absent an abuse of discretion by the trial court, a sentence may not be altered upon review [Citation.]." (Internal quotation marks omitted.) *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341 (quoting *People v. Hensley*, 354 Ill. App. 3d 224, 234-35, 819 N.E.2d 1274, 1284 (2004).

An abuse of discretion will not be found unless the court's sentencing decision is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26, 82 N.E.3d 693. Also, an abuse of

discretion will be found "where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010) (quoting *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000)).

¶ 42    In the case before us, defendant pleaded guilty to two counts of criminal sexual assault by the use or threat of force, both counts being Class 1 felonies. See 720 ILCS 5/11-1.20(a)(1) (West 2014). A person convicted of a Class 1 felony, other than for second degree murder, is subject to a sentencing range of 4 to 15 years in the Illinois Department of Corrections. 730 ILCS 5/5-4.5-30(a) (West 2014). A person convicted of more than one count of criminal sexual assault must serve those sentences consecutively. 730 ILCS 5/5-8-4(d)(2) (West 2014). When a sentence falls within the statutory range of sentences possible for a particular offense, it is presumed reasonable. *People v. Moore*, 41 Ill. App. 3d 3, 4, 353 N.E.2d 191, 192 (1976). In order to consider it an abuse of discretion, we must find it to be at odds with the purpose and spirit of the law or manifestly disproportionate to the nature of the offense. *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 33, 993 N.E.2d 614. A defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense. When mitigating factors are presented to a court, the reviewing court should presume that the circuit court considered them. *People v. Pippen*, 324 Ill. App. 3d 649, 652, 756 N.E.2d 474, 477 (2001). As the trial court's seven-year sentence for each count falls within the relevant sentencing range, we will not disturb the sentence absent an abuse of discretion.

¶ 43    At the sentencing hearing, the trial court stated it considered the presentence report, the statutory factors in aggravation and mitigation, arguments of counsel, and defendant's statement in allocution. The court recognized defendant had some criminal history, but noted it

was "not significant." The court stated it was going to "impose a sentence in this case that reflect[ed] the seriousness of [defendant's] crime, but also reflect[ed] the mitigation *** presented." The court made a record indicating there was a pause before it began its comments because it was "considering very strongly what is appropriate here."

¶ 44　　　　The seriousness of the crime is the most important factor for the court to consider. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 28, 69 N.E.3d 425. The offense committed by the defendant consisted of the vaginal and oral penetration of a 17-year-old girl by the use or threat of force. The factual basis described how defendant and two others, holding down the victim and refusing to allow her to get up, took turns having vaginal intercourse with her and forcing her to perform oral sex on them. The court also heard from the victim and her mother about how defendant's actions have negatively and continuously affected the victim and her family. The record leaves no doubt the court considered the seriousness of defendant's actions. Finding the offense was of "such a serious nature," the court remarked imposing a sentence in excess of the seven-year recommendation on each count would be appropriate in this case, but it considered the mitigation presented to "essentially temper what *** would probably be the appropriate sentence" and concluded a seven-year sentence on each count was appropriate.

¶ 45　　　　Defendant, however, also argues his seven-year sentence for each count is excessive considering defendant's rehabilitative potential. Defendant states judicial action from this court is required to impose a less harsh sentence because the trial court imposed a sentence "without regard to the constitutional and statutory mandate that sentences are to be rehabilitative, not just retributive." However, a defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense. *Pippen*, 324 Ill. App. 3d at 652.

¶ 46    Here, the record reflects the trial court weighed the mitigating factors, including defendant's rehabilitative potential, and the seriousness of the offense before sentencing defendant within the statutory sentencing range. The court even indicated, but for the mitigation presented on behalf of defendant, a more severe sentence would be appropriate based on the nature and circumstances of the case. The fact that defendant did not like the outcome after the court considered all the evidence before it does not warrant a reduction of defendant's sentence or another hearing. His sentence was within the statutory range of sentences possible and there is nothing in the record to support the assertion the court's decision was fanciful, arbitrary, unreasonable, or manifestly disproportionate to the nature of the offense.

¶ 47    Accordingly, we find the seven-year sentence for each count imposed on defendant by the court was not " 'greatly at variance with the spirit and purpose of the law,' " nor was it " 'manifestly disproportionate to the nature of the offense.' " *Alexander*, 239 Ill. 2d at 212 (quoting *Stacey*, 193 Ill. 2d at 210). Thus, the court did not abuse its discretion.

¶ 48                            III. CONCLUSION

¶ 49    For the reasons stated, we affirm the trial court's judgment.

¶ 50    Affirmed.